STATE of Missouri, Respondent,

v.

Vincent McFADDEN, Appellant.

No. SC 88959.

Supreme Court of Missouri,
En Banc.

May 29, 2012.

Rehearing Denied July 31, 2012.

728

Janet M. Thompson, Public Defender's Office, Columbia, for McFadden.

Timothy A. Blackwell, Attorney General's Office, Jefferson City, for the State.

GEORGE W. DRAPER III, Judge.

**Introduction and Procedural History**

Vincent McFadden (hereinafter, "McFadden") was found guilty of first-degree murder, section 565.020, RSMo Supp.2004,[1] and armed criminal action, section 571.015. McFadden was sentenced to death, consistent with the jury's recommendation. This Court has exclusive jurisdiction. Mo. Const. art. V, sec. 3. The judgment is affirmed.

**Facts**

On July 3, 2002, Todd Franklin (hereinafter, "Franklin") and Mark Silas (hereinafter, "Silas") encountered McFadden and Michael Douglas (hereinafter, "Douglas") in a vacant lot. McFadden and Douglas asked Franklin if he had a gun. Franklin indicated he did not have a gun and started to walk away. Douglas then pulled out a gun and fired, as if to verify Franklin did not have a gun. Franklin and Silas ran.

Franklin ran into his next-door neighbor's yard. Franklin began asking his neighbor, Gregory Hazlett (hereinafter, "Hazlett"), whether he could do any work for Hazlett. Hazlett did not respond but began walking toward his home. McFad-

---

**1.** All further statutory references herein are to RSMo Supp.2004 unless otherwise indicated.

den and Douglas approached Franklin in Hazlett's yard.

Douglas shot Franklin in Hazlett's driveway. Franklin fell to the ground. McFadden approached Franklin and kicked him, uttering derogatory epithets. McFadden, standing over Franklin, shot him at least two more times, and ran away. The gunshot wounds were fatal; Franklin died at the scene.

Following a jury trial, McFadden was found guilty of first-degree murder and armed criminal action. During the penalty phase, the State presented evidence of McFadden's prior convictions, evidence McFadden murdered his girlfriend's sister, evidence that McFadden attempted to prevent his girlfriend, Eva Addison (hereinafter, "Addison"), from identifying him as her sister's murderer, and evidence that McFadden was in possession of 18.4 grams of crack at the time of his arrest.

The jury found five statutory aggravators: four serious assaultive convictions and depravity of mind. The jury assessed a sentence of death. The trial court sentenced McFadden accordingly, imposing the death penalty for first-degree murder and life imprisonment for armed criminal action. McFadden previously was tried and convicted for the murder of Franklin, but that conviction was reversed and remanded because the State engage in purposeful discrimination by striking five African–American venirepersons. *State v. McFadden*, 191 S.W.3d 648 (Mo. banc 2006) ("*McFadden I*"). This appeal follows.

### Standard of Review

This Court reviews a sentence of death on direct appeal for prejudice, not just mere error. *State v. Anderson*, 306 S.W.3d 529, 534 (Mo. banc 2010). This Court will reverse a trial court's decision only when an alleged error is so prejudicial

that the defendant was deprived of a fair trial. *State v. Johnson*, 284 S.W.3d 561, 568 (Mo. banc 2009). Prejudice exists when there is a reasonable probability that the trial court's error affected the outcome at trial. *Id.* Evidence admitted at trial is reviewed in the light most favorable to the verdict and is reviewed for an abuse of discretion. *Anderson*, 306 S.W.3d at 534.

Many of the points on appeal raised by McFadden are not preserved for appeal. Accordingly, these points can be reviewed only for plain error. Rule 30.20. Plain error is found when the alleged error " 'facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred.' " *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (quoting *State v. Salter*, 250 S.W.3d 705, 713 (Mo. banc 2008)).

McFadden raises fourteen points on appeal. They are all denied.

### Point One: Relevant Evidence Excluded

McFadden claims the trial court erred in limiting the testimony of Douglas, a defense witness. McFadden avers Douglas' testimony regarding Douglas' plea, sentence, and potential for being charged with perjury was relevant to the charges against McFadden and would have demonstrated a bias or motive to lie. McFadden believes Douglas' testimony was limited improperly in both the guilt and penalty phases.

A trial court has broad discretion to admit or exclude evidence. *State v. Bowman*, 337 S.W.3d 679, 686 (Mo. banc 2011). "Reversal due to an evidentiary error requires a showing of prejudice." *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. banc 2009).

■ In the guilt phase, the State successfully sought to exclude Douglas' testimony regarding the details of his plea agreement. The trial court allowed testimony that Douglas pleaded guilty to his participation in Franklin's murder but excluded the specific language of the charge to which he pleaded and the sentence he received.

McFadden now argues that the State opened the door to this evidence and it was admissible to show Douglas' bias or motive to lie. The State asked Douglas what he meant by the two following statements: "I'll put some of the weight on my shoulder to take the weight of the world off yours," and "We gonna see the streets again sooner rather than later." McFadden states this questioning should have allowed McFadden to explore Douglas' responses and introduce evidence of the specific charge and sentence Douglas received.

At the time Douglas was cross-examined by the State, the jury already had evidence before it that Douglas pleaded guilty and did not receive the maximum sentence. Additionally, the jury heard Douglas' inconsistent statements made to the police regarding the identity of the second shooter. Adducing additional evidence of the sentence term Douglas received would not indicate Douglas had a further bias or motive to lie, and McFadden did not demonstrate there was any prejudice.

In the penalty phase, McFadden sought to admit Douglas' plea deal and lesser sentence as mitigation evidence. McFadden believes he should be able to present any evidence surrounding the circumstances of Douglas' offense.

The trial court excluded this evidence in mitigation based upon *Edwards v. State*, 200 S.W.3d 500, 511 (Mo. banc 2006) (holding there is no basis for concluding a co-defendant's sentence is relevant as to mitigation in the penalty phase). McFadden seeks this Court to revisit its opinion; we decline to do so.

## Point Two: Double Jeopardy

■ McFadden claims the trial court erred in allowing evidence of the State's theory that he killed Franklin because Franklin was a witness in a prior prosecution. McFadden asserts that because the *McFadden I* jury rejected this statutory aggravator, the State collaterally was estopped from presenting this evidence in this trial because the *McFadden I* jury's rejection of the statutory aggravator constituted an acquittal. Hence, McFadden argues this subjected him to double jeopardy. McFadden requests this Court to reverse the judgment and remand the case for a new penalty phase trial.

At trial, the State presented evidence regarding a possible motive for McFadden to kill Franklin. However, the State did not submit this statutory aggravator to the jury.

In *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), the United States Supreme Court "reject[ed] the fundamental premise of petitioner's argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an 'acquittal' of that circumstance for double jeopardy purposes...." *Id.* at 155, 106 S.Ct. 1749. Following *Poland*, this Court held "the failure to find a particular aggravating circumstance forms the basis for judgment of acquittal on the imposition of the death sentence only when there is a complete failure to find that *any* aggravating circumstance exists to support the death sentence." *State v. Simmons*, 955 S.W.2d 752, 760 (Mo. banc 1997) (emphasis added).

The trial court allowed the State to present evidence of a possible motive for McFadden to murder Franklin. The State did not submit the same aggravator from McFadden's first jury trial, *McFadden I*. This Court rejected the same theory of double jeopardy in *State v. Storey*, 40 S.W.3d 898, 914–15 (Mo. banc 2001) (holding the submission of an aggravator rejected in a previous trial does not violate double jeopardy). Accordingly, McFadden was not subjected to double jeopardy, and there was no error.

### Point Three: Venireperson's Removal for Cause

 McFadden claims the trial court abused its discretion in sustaining a strike for cause to venireperson Mark Kerr (hereinafter, "Venireperson Kerr"). McFadden believes Venireperson Kerr stated he was able to follow the court's instructions and was unimpaired by his views; therefore, he was a qualified juror.

 A prospective juror in a capital case may be excluded for cause when "the juror's views would prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (internal quotation marks omitted). A juror's qualifications are not determined conclusively by a single answer but rather from the entire voir dire examination. *State v. Davis*, 318 S.W.3d 618, 639 (Mo. banc 2010).

 "The trial court is in the best position to evaluate a vernireperson's commitment to follow the law and is vested with broad discretion in determining the qualifications of prospective jurors." *State v. Clayton*, 995 S.W.2d 468 (Mo. banc 1999). Unless the trial court abuses its discretion, a trial court's ruling on a challenge for cause will not be disturbed. *State v. Deck*, 303 S.W.3d 527, 535 (Mo. banc 2010). "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Id.* (quoting *Uttecht v. Brown*, 551 U.S. 1, 9, 127 S.Ct. 2218, 167 L.Ed.2d 1014 (2007)). Even a juror's assurance that he or she can follow the law and consider the death penalty may not overcome the reasonable inferences from other responses that he or she may be unable or unwilling to follow the law. *Id.* at 535–36; *see also State v. Roberts*, 948 S.W.2d 577, 597 (Mo. banc 1997).

During the State's voir dire, Venireperson Kerr twice hesitated when asked whether he would be able to vote for the death penalty and whether he would be able to sign the verdict as a foreperson. The State then made further inquiries of Venireperson Kerr, seeking to discover whether he would be able to follow the law. Venireperson Kerr stated that the death penalty can be administered unfairly and he may require proof beyond all doubt. However, while being questioned by defense counsel, Venireperson Kerr stated he would be "okay" "[i]f the definition of 'beyond a reasonable doubt' is 'firmly convinced.'"

In its determination that Venireperson Kerr should be struck for cause, the trial court recognized Venireperson Kerr waivered on his ability to consider the death penalty on multiple occasions. The trial court noted that on more than one occasion Venireperson Kerr stated he would hold the State to a higher burden of proof. The trial court also found that Venireperson Kerr never indicated clearly he would be able to follow the instructions of the court.

The trial court was in the best position to determine Venireperson Kerr's qualification to serve on the jury by observing his answers and demeanor. Here, not only was Venireperson Kerr hesitant about whether he could sign a death verdict, he also indicated that he may be unwilling to follow the law by holding the State to a higher burden of proof. *See State v. Middleton*, 995 S.W.2d 443, 460 (Mo. banc 1999) (finding trial court did not abuse its discretion in striking venireperson for cause after statement that venireperson would require proof beyond all doubt). The trial court did not err in striking Venireperson Kerr for cause.

### Point Four: Denial of *Batson*[2] Challenge

■ McFadden claims the trial court erred in overruling his *Batson* challenge to the State's preemptory strike of an African–American venireperson, Wanda Bryant (hereinafter, "Venireperson Bryant"). McFadden believes this violated his rights to equal protection of the law, due process, and a fair trial before an impartial jury because he is African–American and the State's reason for striking Venireperson Bryant was pretextual.

■ "Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race." *State v. Hampton*, 163 S.W.3d 903, 904 (Mo. banc 2005) (quoting *State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002)). Missouri courts employ a three-step process to resolve a *Batson* challenge:

First, a defendant must challenge one or more specific venirepersons struck by the State and identify the cognizable racial group to which they belong.

Second, the State must provide a race-neutral reason that is more than an unsubstantiated denial of discriminatory purpose. Third, the defense must show that the State's explanation was pretextual and the true reason for the strike was racial.

*McFadden I*, 191 S.W.3d at 651.

■ This Court considers a nonexclusive list of factors in determining whether pretext exists, including: "the explanation in light of the circumstances; similarly situated jurors not struck; the relevance between the explanation and the case; the demeanor of the state and excluded venire members; the court's prior experiences with the prosecutor's office; and objective measures relating to motive." *Johnson*, 284 S.W.3d at 571. When reviewing a trial court's decision concerning a *Batson* challenge, the trial court "is accorded great deference because its findings of fact largely depend on its evaluation of credibility and demeanor." *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010) (quoting *Kesler–Ferguson v. Hy–Vee, Inc.*, 271 S.W.3d 556, 558 (Mo. banc 2008)). This Court will reverse the trial court's findings on a *Batson* challenge only "if they are clearly erroneous, meaning the reviewing court is left with the definite and firm conviction that a mistake has been made." *State v. McFadden*, 216 S.W.3d 673, 675 (Mo. banc 2007) ("*McFadden II* ").

In this case, there were 119 potential jurors called, and seventeen of them were African–American. After the venirepersons who were struck for cause were removed, the State sought to use its peremptory challenges for four additional African–American venirepersons. McFadden made a *Batson* challenge regarding these four venirepersons. The State presented

---

**2.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

its race-neutral reasons for its strikes. The trial court found the State's reasons for its peremptory strikes of three of the venirepersons were not race-neutral, and it sustained McFadden's *Batson* challenges as to those venirepersons. Those three venirepersons served as members of McFadden's jury.

However, in regard to the fourth venireperson, Venireperson Bryant, the State presented its race-neutral reasons for striking her, including her statements that she would require a higher standard of proof, she leaned toward life without parole, and she initially hesitated in her answer whether she could consider the death penalty. A venireperson's "hesitation and body language during questioning [is] a legitimate basis for using a peremptory strike." *State v. Morrow*, 968 S.W.2d 100, 114 (Mo. banc 1998).

Since the State identified acceptable reasons for its strike, the burden to prove pretext shifts back to McFadden. McFadden fails to elucidate his reasoning as to why the State's race-neutral reasons in striking Venireperson Bryant were pretextual. His only explanation is that the State was found to have violated *Batson* in *McFadden I* and *McFadden II*. McFadden argued that Venireperson Bryant's hesitation could be explained by the fact that she was the first venireperson in her group asked about sentencing. McFadden asserted Venireperson Bryant stated she could follow the trial court's instructions. McFadden argued the State engaged in a pattern of systematic discriminatory questioning of the African–American venirepersons as compared to the Caucasian venirepersons.

The record demonstrates the State was concerned each time a venireperson hesitated before giving a response without regard to race. Accordingly, the trial court did not clearly err in denying McFadden's *Batson* challenge as to Venireperson Bryant as McFadden failed to articulate reasons demonstrating the State engaged in a pretextual or racially motivated strike.

## Point Five: Admission of testimony in guilt phase

McFadden asserts the trial court plainly erred during the guilt phase of his trial in admitting testimony that implied he had committed other uncharged crimes. McFadden identifies alleged error with testimony of three witnesses who stated McFadden's photograph was on the wall at the police station, testimony of a fingerprint expert witness who compared McFadden's prints to those in a master file, and the State's opening statement which referenced this potential testimony. Since there was no objection to this evidence, McFadden argues the trial court should have intervened *sua sponte* and declared a mistrial.

"To properly preserve an issue for an appeal, a timely objection must be made during trial." *State v. Cooper*, 336 S.W.3d 212, 214 (Mo.App. E.D.2011) (quoting *State v. Scott*, 298 S.W.3d 913, 916 (Mo.App. E.D.2009)). The objection at trial must be specific, and on appeal, the same grounds must be relied upon. *State v. Rasheed*, 340 S.W.3d 280, 287 (Mo.App. E.D.2011); *State v. Moore*, 303 S.W.3d 515, 522–23 (Mo. banc 2010). McFadden's challenge to the admission of this evidence can only be reviewed for plain error. Rule 30.20.

Mistrial is a "drastic remedy and should be employed only in the most extraordinary circumstances." *Taylor*, 298 S.W.3d at 512 (quoting *State v. Brooks*, 960 S.W.2d 479, 491 (Mo. banc 1997)). Here, the trial court did not err in failing to grant a mistrial *sua sponte* for admitting admissible evidence.

Generally, "proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he [or she] is on trial." *State v. Vorhees*, 248 S.W.3d 585, 587 (Mo. banc 2008). There are, however, exceptions under which otherwise inadmissible evidence may be admitted. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). This evidence may be admissible if it tends to establish: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial." *Id.*

### (1) Witness testimony of the photograph

Three witnesses testified they viewed McFadden's photograph in the police station. McFadden claims the mere fact that his photograph was identified in the police station, without any other incriminating reference, indicated that he was "wanted" for other crimes.

The comments made by the witnesses were not made to indicate McFadden had committed prior bad acts or uncharged crimes, merely that they saw his photograph in the police station. There was no evidence linking McFadden's photograph to other crimes he may or may not have committed. *See State v. Goodwin*, 43 S.W.3d 805, 815 (Mo. banc 2001) (finding vague references that are not clear evidence linking defendant to other crimes are admissible); *State v. Carr*, 50 S.W.3d 848, 857 (Mo.App. W.D.2001) (requiring defendant to demonstrate photographs maintained by the police department were only of persons who committed prior crimes or that average juror believes same

to satisfy burden of involvement in prior criminal activity); *Nunn v. State*, 755 S.W.2d 269, 272 (Mo.App. E.D.1988) (finding an officer testifying he saw defendant's photograph at roll call was not suggestion that defendant had a criminal record when there was no actual evidence of other crimes).

The witnesses made these statements during their identification of McFadden as the perpetrator of Franklin's murder. This evidence tended to establish "the identity of the person charged with the commission of the crime on trial." *Primm*, 347 S.W.3d at 70. The evidence that McFadden's photograph was displayed at the police station did not constitute evidence of uncharged crimes. The trial court did not plainly err in failing to declare a mistrial *sua sponte*.

### (2) Fingerprint examiner's testimony

McFadden claims the fingerprint examiner's testimony that he had a fingerprint card suggested his involvement in prior criminal activity. The fingerprint examiner testified that after discovering a fingerprint near Franklin's body, she compared it to other fingerprints from "the Automated Fingerprint Identification System." She stated she matched the unknown fingerprint to a fingerprint card with McFadden's name.

"Fingerprint cards, in and of themselves, do not constitute evidence of a prior crime." *Morrow*, 968 S.W.2d at 111. The fingerprint examiner's testimony was neutral; she testified as to the procedure she used to identify the fingerprint she found. There was no testimony by the fingerprint examiner that McFadden was fingerprinted pursuant to an arrest or conviction of a crime, which would render the fingerprint examiner's testimony inadmissible. *State v. McMilian*, 295 S.W.3d 537, 540 (Mo. App. W.D.2009). Accordingly, the trial

court did not plainly error in failing to declare a mistrial *sua sponte*.

### (3) Opening statement

■ McFadden claims the State's opening statement referring to the witnesses' testimony regarding his photograph and the fingerprint examiner was error. However, McFadden fails to support this assertion with an argument in his brief.

■ The "unsworn remarks of counsel ·in opening statements, during the course of trials or in arguments are not evidence of the facts asserted." *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006). "Admissible evidence may be referred to in an opening statement if a good faith basis exists." *Forrest v. State*, 290 S.W.3d 704, 718 (Mo. banc 2009).

McFadden presents no argument, nor can this Court create one, regarding how the trial court plainly erred in failing to grant a mistrial *sua sponte* during the State's opening statement in reference to evidence that the State had a good faith basis to believe would be admissible at trial. There was no error.

### Point Six: Statutory Aggravators Instruction

McFadden alleges the trial court improperly submitted Instruction No. 18 to the jury in that it did not comply with MAI–CR3d 314.40 and the accompanying Notes on Use. McFadden states there were five separately numbered paragraphs for statutory aggravators when there should have been only two.

Pursuant to section 565.032.2(1), each relevant conviction may be considered a statutory aggravator when assessing punishment in a first-degree murder case. McFadden claims all of his relevant prior convictions should have been listed as one

statutory aggravator rather than listed individually.

This Court addressed a similar situation in *State v. Taylor*, 18 S.W.3d 366 (Mo. banc 2000). In *Taylor*, this Court explained that it was permissible to separate prior convictions rather than listing all of the prior convictions together as one statutory aggravator. This eliminates potential jury confusion if the jury were to believe that one prior conviction may be a statutory aggravator but another would not be relevant to assessing punishment. *Id. see also State v. Clemmons*, 753 S.W.2d 901, 912 (Mo. banc 1988) ("If the convictions were submitted together as one aggravating circumstance the jury would be confused about whether it could consider the death penalty if it believed one of the convictions existed but not the others."); *State v. Williams*, 97 S.W.3d 462, 473 (Mo. banc 2003) (allowing multiple prior convictions to be enumerated separately statutory aggravators), and *State v. Black*, 50 S.W.3d 778, 792 (Mo. banc 2001) (finding the trial court properly listed prior convictions as separate statutory aggravators).

■ Even assuming, *arguendo*, that all of McFadden's relevant prior convictions should have been combined and listed in one paragraph for the statutory aggravators, his sentence must be upheld. Only one statutory aggravating circumstance must be found for the jury to recommend the imposition of the death penalty. Section 565.030.4; *State v. Gill*, 167 S.W.3d 184, 193 (Mo. banc 2005). In this case, the jury found five statutory aggravators: his four convictions and depravity of mind. There was no error.

### Point Seven: "Depravity of Mind" Aggravator

■ McFadden believes the trial court erred in submitting the "depravity of mind" aggravator to the jury because it

allowed the jury to consider Douglas' conduct in its assessment of McFadden's punishment. This point has not been preserved, and thus, we review for plain error only. Rule 30.20.

McFadden argues the depravity of mind aggravator was unclear and forced the jury to assess McFadden's punishment based upon Douglas' conduct. McFadden refers this Court to *State v. Isa*, 850 S.W.2d 876, 902–03 (Mo. banc 1993), wherein this Court found the depravity of mind aggravator allowed the jury to assess guilt to the defendant based upon the acts of another.

In this case, the trial court instructed the jury on the "depravity of mind" aggravator which, in pertinent part, was as follows:

> . . . Whether the murder of Todd Franklin involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find: That [McFadden] killed Todd Franklin after he was bound or otherwise rendered helpless by [McFadden] or another acting with or aiding [McFadden] and that [McFadden] thereby exhibited a callous disregard for the sanctity of all human life.

The depravity of mind aggravator in this case is substantially different from the one submitted in *Isa*. *Cf. Isa*, 850 S.W.2d at 901–02 (stating the depravity of mind instruction allowed the jury to find depravity if ". . . the defendant Marisa Isa *acting together with* Zein Isa. . . .") (emphasis added). Here, the aggravator instructed the jury to only make its determination based upon McFadden's conduct and his ultimate action of killing Franklin.

Further, only one statutory aggravating circumstance must be found for the jury to recommend the imposition of the death penalty. Section 565.030.4; *Gill*, 167 S.W.3d at 193. In addition to this statutory aggravator, the jury found that each of McFadden's prior convictions were statutory aggravators. The trial court did not plainly err.

### Point Eight: Jury failed to find limiting construction in Instruction No. 18

McFadden alleges the trial court plainly erred in accepting the jury's death verdict and sentencing him to death because the jury did not find the "depravity of mind" aggravator properly. Further, McFadden believes that if the jury did make a proper finding, the limiting construction was void for vagueness.

■ In determining McFadden's sentence, the jury found five statutory aggravators, including the "depravity of mind" aggravator. Section 565.032.2(7). The jury was instructed to write out "the statutory aggravating circumstances . . . which you found beyond a reasonable doubt." The foreperson filled out the verdict form, writing out the "depravity of mind" aggravator but not writing out the limiting factual finding the jury made to support the aggravator.

The jury found five statutory aggravators beyond a reasonable doubt. The foreperson explicitly followed the instructions by only writing out the statutory aggravators. "The verdict form for aggravating circumstances may have been inartfully completed by the jury, but this does not negate the fact that the necessary findings were made to support this aggravator." *State v. Zink*, 181 S.W.3d 66, 76 n. 24 (Mo. banc 2005).

■ Additionally, McFadden avers the limiting construction was void for vagueness. This Court has held previously that

the instruction for "depravity of mind" based on MAI–CR3d 314.40 is not unconstitutionally vague as there is sufficient guidance provided to the jury. *Johnson,* 284 S.W.3d at 587. "The 'depravity of mind' factor requires evidence to support at least one factor established in *State v. Preston,* 673 S.W.2d 1, 11 (Mo. banc 1984)." *Id.*

Here, the limiting construction submitted to establish "depravity of mind" tracked the language of the Notes on Use to MAI–CR3d 314.40. The limiting construction correctly limits the aggravating circumstance so that the jury would not be able to conclude that the aggravating circumstance could apply to every defendant eligible for the death penalty. *State v. Butler,* 951 S.W.2d 600, 605 (Mo. banc 1997). The trial court did not plainly err.

### Point Nine: Double Jeopardy and Instruction No. 18

■ McFadden claims the trial court erred in submitting the "depravity of mind" aggravator in Instruction 18 because the *McFadden I* jury did not write out the limiting construction, thereby rejecting the aggravator and acquitting him of this aggravator. By submitting this aggravator again, McFadden believes he has been subjected to double jeopardy.

■ McFadden's prior trials both were reversed and remanded because he raised valid *Batson* claims. His reversals were due to an error committed by the trial court rather than for evidentiary insufficiency. "When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." *State v. Severe,* 307 S.W.3d 640, 647 (Mo. banc 2010) (quoting *Burks v. U.S.,* 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). Double jeopardy is not implicated by the State's additional opportunity to try McFadden. The State may develop its case by presenting new evidence on any element or by submitting the same jury instruction. *Id.*

There was no acquittal in McFadden's previous trial. Double jeopardy protections did not attach. The trial court did not err.

### Point Ten: Failure of the jury to make "serious assaultive" finding

McFadden's final challenge to Instruction No. 18 alleges that the instruction did not require the jury to make a "serious assaultive" factual finding regarding four of the statutory aggravators. McFadden claims the jury, in looking at each prior conviction, must find its "serious" and "assaultive" nature. McFadden relies upon *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) to support his argument.

This Court has addressed this same argument multiple times. *Williams,* 97 S.W.3d at 474 and *Black,* 50 S.W.3d at 792. "The determination of whether a prior offense is 'serious assaultive' is a question of law for the court to decide." *State v. Mayes,* 63 S.W.3d 615, 640 (Mo. banc 2001). The trial court did not err.

### Point Eleven: Instructions Failed to State Proper Burden of Proof

McFadden argues the trial court erred in submitting Instructions Nos. 19 and 21, based upon MAI–CR3d 313.44, the mitigating circumstances instruction, and MAI–CR3d 314.48, the unanimity instruction. McFadden claims these instructions are in conflict with *State v. Whitfield,* 107 S.W.3d 253 (Mo. banc 2003), *Ring,* 536 U.S. 584, 122 S.Ct. 2428, *Apprendi,* 530

U.S. 466, 120 S.Ct. 2348 and section 565.030.4.

McFadden's allegations that the instructions improperly shifted the burden of proof has been rejected by the United States Supreme Court and this Court. The United States Supreme Court stated:

> So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

*Kansas v. Marsh*, 548 U.S. 163, 170–71, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006) (quoting *Walton v. Arizona*, 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (*overruled on other grounds by Ring*, 536 U.S. 584, 122 S.Ct. 2428)). This Court has rejected this argument in *Davis*, 318 S.W.3d at 643; *Johnson*, 284 S.W.3d at 587–89; *Zink*, 181 S.W.3d at 74; and *State*

*v. Taylor*, 134 S.W.3d 21, 30 (Mo. banc 2004).

Further, McFadden alleges the trial court plainly erred in admitting evidence of non-statutory aggravators. "Nonstatutory aggravators ... are relevant only after finding a statutory aggravator." *State v. Parker*, 886 S.W.2d 908, 928 (Mo. banc 1994). "As a general proposition, however, the facts and circumstances surrounding prior convictions, not just the existence of those convictions, may be introduced during the penalty phase." *State v. Simmons*, 955 S.W.2d 729, 740 (Mo. banc 1997). McFadden offers no reason to believe he suffered manifest injustice, and this Court has found none. The trial court did not err.

**Point Twelve: Due Process violations by State in voir dire, guilt phase opening and closing, and penalty phase closing**

McFadden delineates thirty-nine separate statements made by the State during the course of the entire trial that he believes were admitted improperly and resulted in prosecutorial misconduct.[3]

---

**3.** Rule 84.04(d) requires that a point relied on shall: (1) identify the challenged ruling; (2) concisely state the legal reasons for the claim of error; and (3) explain in summary fashion why the reasons support the claim of error. A statement of a point relied on violates Rule 84.04(d) when it groups together multiple contentions not related to a single issue. Rule 84.04 is not merely an exhortation from a judicial catechism nor it is a suggestion of legal etiquette.

> When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role.

*Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

This Court recognizes there is a tension between being an zealous advocate for one's client, especially in a death penalty case. However, the best interests of the client are not always served by including every potential statement of error from voir dire, the guilt phase, and the penalty phase in one point on appeal. Raising allegations of error just for the sake of argument are ineffectual and do not serve the best interests of the client.

The point on appeal in this case lists many generalized statements made by the State throughout the entire trial. The point on appeal is three and a half pages long. This is a multifarious point that has required this Court to spend significant time to determine the fair substance of McFadden's claims, research the record, and resolve those claims. Any issue or point not addressed was not preserved for review. *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005).

McFadden failed to object to nearly every statement for which he now complains; accordingly, all of the allegations in this point will be reviewed for plain error only. For the statements which McFadden did not preserve, he believes the trial court should have intervened and granted him a mistrial *sua sponte.* Under plain error review, McFadden must prove the alleged misstatements had a decisive impact on the outcome of his trial. *Dorsey,* 318 S.W.3d at 655. For the few statements which McFadden did preserve, he believes the trial court abused its discretion.[4]

### (1) Voir Dire

■ McFadden alleges the State made improper arguments during voir dire. McFadden claims the State's comments introducing himself and explaining to the jury that he worked for the elected prosecutor, telling various venirepersons that their answers did not matter, erroneously stating the jury must be unanimous to reach a verdict of life without parole, and referring to other cases were all error.

McFadden first claims the State "perverted the system to ensure an unfair trial" beginning with the prosecutor introducing himself and explaining that he worked for the county's elected prosecutor. McFadden has no support for how or why this introduction by the State prejudiced the venirepanel.

Next, McFadden avers the State told various venirepanel members that their answers did not matter. One of the veniremembers was told that he would not be questioned because that venireperson would be unavailable to serve on the jury. The purpose of voir dire is for the State and defense counsel to identify qualified veniremembers to serve on McFadden's jury. Yet, McFadden fails to identify a single venireperson who was either improperly excluded from his jury or improperly included in his jury based upon voir dire questioning.

This Court previously has rejected McFadden's claim that the trial court plainly erred in not declaring a mistrial *sua sponte* when the State informed the jury that a verdict for life imprisonment requires a unanimous jury. *See Storey v. State,* 175 S.W.3d 116, 156 (Mo. banc 2005); *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998).

■ McFadden's final claim regarding voir dire focuses upon the State's hypothetical references to other cases. McFadden believes that the State's comments, "[C]an you think of a case where someone might throw the weapon in the Mississippi River, for example? How many guns do you think are in the bottom of the Mississippi River?" were impermissible references to facts not in evidence. A "trial court may permit parties to inquire whether potential jurors have preconceived notions on the law which will impede their ability to follow instructions on issues which will arise in the case. . . ." *State v. Johnson,* 207 S.W.3d 24, 41 (Mo. banc 2006). Here, the prosecutor merely attempted to illustrate an example of a reason why the State is not required to show that a weapon was recovered and still may meet its burden of proof.

McFadden fails to make the required showing that any of these unpreserved issues were so prejudicial that the trial court should have intervened *sua sponte* in voir dire. He has not shown a decisive impact.

### (2) Guilt–Phase Opening Statement

McFadden claims the State erred in identifying him from a photograph in the

---

4. The preserved allegations of error will be noted specifically.

police station, vouching for the witnesses, and reading letters sent from McFadden's cell. The State made these comments in its opening statement of the guilt phase of McFadden's trial.

 "The primary purpose of an opening statement is to inform the judge and jury of the general nature of the case, so they may appreciate the significance of the evidence as it is presented." *State v. Rutter*, 93 S.W.3d 714, 727 (Mo. banc 2002) (quoting *State v. Thompson*, 68 S.W.3d 393, 394 (Mo. banc 2002)). An opening statement is not evidence. *Id.*

This Court has addressed the issue of identifying McFadden's photograph in the police station in the fifth point on appeal. There was no error in allowing the State to refer to admissible evidence. *Forrest*, 290 S.W.3d at 718.

McFadden also alleges the State vouched for Hazlett's testimony. Vouching for a witness occurs when the State implies the "facts establishing the veracity of a ... witness that are not before the jury for their consideration." *Glover v. State*, 225 S.W.3d 425, 430 (Mo. banc 2007). There was no vouching as the State's opening statement only included subsequent evidence that was presented to the jury at trial.

 Next, McFadden claims the State alluded to facts outside of record by reading letters from McFadden. Those letters were admitted as exhibits at trial. The State's comments were provable factual statements. McFadden is not entitled to plain error relief because he has not demonstrated that the State's comments in its opening statement resulted in manifest injustice because the record establishes the State's comments were supported by the evidence at trial. *State v. Powell*, 286 S.W.3d 843, 851 (Mo.App. W.D.2009).

### (3) Guilt Phase Closing Argument

 McFadden presents a long list of alleged statements made by the State in its closing argument that were so prejudicial that the trial court should have intervened *sua sponte*. Closing argument is designed to advise the jury and opposing counsel of each party's position and to advocate to the jury what that party believes the jury should do. *State v. Davis*, 126 S.W.3d 398, 402 (Mo.App. W.D.2004). Plain error is rarely found in closing argument. *State v. Lawson*, 50 S.W.3d 363, 367 (Mo.App. S.D.2001). "Reversal is required for improper argument only if such argument had a decisive effect on the jury's determination." *Id.* The burden to demonstrate a decisive effect is on the defendant. *Taylor*, 298 S.W.3d at 510 (quoting *Johnson*, 284 S.W.3d at 573). "The entire record is considered when interpreting a closing argument, not an isolated segment." *Id.*

### (a) Vouching

McFadden claims the State improperly vouched for the testimony of two witnesses during closing argument. McFadden fails to support these claims with any caselaw or analysis.

 The State "is allowed to comment on the witnesses' credibility during closing argument." *State v. Chism*, 252 S.W.3d 178, 188 (Mo.App. W.D.2008). "Vouching occurs when a prosecutor implies that he or she has facts establishing the veracity of a state's witness that are not before on evidence not before the jury for [its] consideration." *Glover*, 225 S.W.3d at 430.

The State presented its reasoning to the jury regarding the credibility of these two witness based upon facts in evidence. Nothing in the record before us bolsters McFadden's bare assertions that the State improperly vouched for these witnesses.

### (b) Outside evidence

McFadden claims the State referred to evidence outside of the record when the State discussed the process of shooting a gun. McFadden believes the State encouraged the jurors to "put themselves in the action."

McFadden initially objected to the State's comments regarding how a specific model of gun is fired as there was no evidence in the record as to how that gun is fired; the trial court sustained the objection. The State continued its argument, stating, "Bang—", and McFadden objected again. This time the trial court overruled the objection and let the State continue. The State then described that "You got to refocus, retrain that gun on that same spot. And those bullets were found right underneath that body. . . ."

The State "is allowed to argue the evidence and all reasonable inferences from the evidence during closing arguments." *State v. Brown*, 337 S.W.3d 12, 14 (Mo. banc 2011). There was evidence in the record that Franklin suffered from multiple gunshots, all in approximately the same location. The State did not implore the jurors to put themselves at the scene or to imagine they were the victim. The trial court did not abuse its discretion in allowing this argument.

### (c) Denigrating comments toward McFadden

McFadden avers the State made several denigrating remarks toward him. McFadden complains about the State's comments that referred to him and his co-defendant as "cold-blooded killers," stating he treated Franklin like a deer,[5] and attempting to garner support with the jury by claiming "they don't think the way we think."

McFadden claims the State's comment that referred to Douglas and him as cold-blooded killers was the State's personal opinion and not supported by the evidence. While not approving this comment, it was not as prejudicial as comments made in other cases when the State's assertion rested upon facts not in evidence. *See Storey*, 901 S.W.2d at 900 (finding error at a penalty phase closing argument when stating, "This case is about the most brutal slaying in the history of this county."). This Court also has affirmed the State's repeated reference to murders as being "cold-blooded" when it results from a reasonable inference from the evidence. *State v. Winfield*, 5 S.W.3d 505, 517 (Mo. banc 1999); *Dorsey*, 318 S.W.3d at 656.

Referring to Franklin's murder by describing McFadden chasing him, assaulting him while using derogatory epithets, and shooting him multiple times, as a "cold-blooded" murder is a reasonable inference from the evidence. McFadden presented no argument that this was decisive; there was no plain error.

### (d) Prosecutorial error

McFadden claims the State's comments to the jury regarding the trial process were so substantial, the trial court should have declared a mistrial *sua sponte*. McFadden believes it was improper for the State to tell the jury it represented St. Louis County and that defense counsel did not want the people of St. Louis County to protect its citizens.[6] Further, McFadden asserts that the State should not have

---

5. McFadden objected to characterizing Franklin as an animal.

6. McFadden's objection to the State's comment was, "St. Louis County protecting their citizens, in this case. It is irrelevant."

stated that returning a jury verdict of a lesser-included offense was "absurd." [7]

First, McFadden presents no analysis to this Court explaining how the State's comment to the jury that it represents St. Louis County is an error. This Court refuses to create a viable analysis for McFadden.

■ Second, the State's comment, "Why in the world would St. Louis County want to protect its citizens?" was not error. The State is allowed "to argue to the jury that the protection of the public rests with them." *State v. Burton*, 219 S.W.3d 778, 781 (Mo.App. E.D.2007) (quoting *State v. Kee*, 956 S.W.2d 298, 304 (Mo.App. W.D. 1997)). These comments were not improper personalization because there was no insinuation of personal danger to the jury or its family members if McFadden were acquitted.

■ The State argued that returning a verdict of second degree murder would be a "victory" for McFadden; the State urged the jury to hold McFadden fully responsible for his crime. McFadden cites this Court to *State v. Storey*, 901 S.W.2d 886, 902 (Mo. banc 1995) without further analysis. In *Storey*, the Court found the State's comments during the penalty phase closing argument to be improper when it argued that if a person had seen the brutal murder of his sister, he would have been justified in taking the defendant's life. *Id.* The Court found these statements referred to facts outside of the record, were designed to inflame the jury, equated the jury's sentencing function with self-defense, and induced the jury to apply emotion to its death penalty decision. *Id.*

Here, the State did not evoke a sense of personal danger for the jury. Rather, the State attempted to demonstrate an inability to justify any conviction except for first-degree murder based on the evidence presented to the jury. *State v. Johnston*, 957 S.W.2d 734, 754 (Mo. banc 1997).

■ Next, McFadden alleges the State improperly commented that while it had reasonable doubt about some of the evidence, it did not matter. McFadden does not develop this argument with any case-law or legal analysis. The State was attempting to explain the difference between proving McFadden's guilt beyond a reasonable doubt and not having to prove what each individual witness said beyond a reasonable doubt. Potentially, the jury could have been confused as to the physical location of a witness when he heard the series of shots that murdered Franklin. The State explained that the jurors could have reasonable doubt about the witness' location, but the witness still heard the series of shots correctly.

The State may "argue the evidence, the reasonable inferences from the evidence, and the credibility of the witnesses." *Glass v. State*, 227 S.W.3d 463, 474 (Mo. banc 2007). The State expressed its opinion of reasonable doubt as to the witness' location. However, the physical location of this witness was not important in its attempt to explain the proper burden of proof. The State attempted to draw a reasonable inference from the evidence at trial regarding this witness; it was not important where the witness was but rather that the witness heard the series of shots. *Rasheed*, 340 S.W.3d at 286. The trial court did not plainly err.

■ Finally, McFadden claims the State improperly suggested that his right to a jury trial and his right to confront Douglas were "B.S." McFadden does not develop this argument with any caselaw or legal analysis. When looking at the

---

**7.** McFadden objected to this statement.

State's comments in context, it is clear the State was questioning rhetorically the defense's tactics. The State was not insinuating that McFadden should not have had a jury trial or did not have the right to confront witnesses. "Comments directed at the tactics of defense counsel are permissible." *Tisius v. State*, 183 S.W.3d 207, 218 (Mo. banc 2006).

McFadden does not present any evidence demonstrating the State's comments during closing argument of his guilt phase had a decisive effect on the outcome of this case. The trial court did not err.

### (4) Penalty–Phase Closing

McFadden delineates multiple errors that he believes indicate the State's comments during its penalty-phase closing argument were improper and resulted in manifest injustice. McFadden fails to support some of his listed errors with any argument or reference to the legal file.

■ Defense counsel did not object to the State's statements; thus, this Court reviews for plain error. Rule 30.20. Accordingly, McFadden's conviction will be revered based upon plain error only if the argument had a decisive effect on the outcome of his trial and it amounts to manifest injustice. *State v. Baumruk*, 280 S.W.3d 600, 618 (Mo. banc 2009). McFadden bears the burden to prove the decisive effect. *Anderson*, 306 S.W.3d at 543. Plain error is seldom found during closing argument of a penalty phase because the absence of an objection and request for relief means that the "trial court's options are narrowed to uninvited interference with summation, which may itself constitute error." *Baumruk, supra.*

### (a) Personalization

McFadden argues the State personalized its closing argument by making the State "an unsworn witness to whom the jury should listen in deciding punishment." McFadden states the trial court abused its discretion in allowing the State to tell the jury it represented the community. Further, McFadden believes the trial court plainly erred in allowing the State's argument that it did not believe there was "anything redeeming or mitigating about" McFadden, the State's belief that McFadden would get the death penalty for his second murder, and claiming the jurors' lives would be at risk in the future from McFadden.

■ First, McFadden objected to the State's comments to the jury that they were not just twelve individuals, but that they represented their community. During closing argument, the State may discuss "the need for strong law enforcement, the prevalence of crime in the community, and that conviction of the defendant is part of the jury's duty to uphold the law and prevent crime." *Forrest*, 290 S.W.3d at 717 (quoting *Roberts*, 948 S.W.2d at 593). The trial court did not abuse its discretion in allowing the State to tell the jury it represented the community.

■ McFadden failed to object to any of the remaining statements he claims were in error; yet, he claims the State improperly personalized its closing argument. "Improper personalization is established when the State suggests that a defendant poses a personal danger to the jurors or their families." *Deck*, 303 S.W.3d at 540. McFadden fails to direct this Court to any comment made by the State that suggested McFadden's future dangerousness would intrude upon the safety of the jury.

The State expressed its opinion[8] that there was no evidence of mitigation in this

8. The State expressed its commentary and concluded, "That's my feeling on it."

case and it believed the jury would find the aggravating circumstances outweighed any mitigating circumstances. The State expressed its opinion that the death penalty should be imposed. The State may assert its opinion regarding the imposition of the death penalty as long as it is based upon the evidence presented. *State v. Strong*, 142 S.W.3d 702, 726 (Mo. banc 2004).

### (b) Victim Impact

■ McFadden claims the State exceeded the scope of victim impact evidence by telling the jury to consider the impact of McFadden's actions on the families of the victims in his other cases as well as the victim and family members in this case. McFadden also claims the State's explanation that he was given a fair trial rather than allowing the family an opportunity for retribution was error.

■ "Victim impact evidence, and related argument about the impact of the crime upon the victim and victim's family, is admissible." *Bucklew v. State*, 38 S.W.3d 395, 399 (Mo. banc 2001). The State wanted the jury to consider the effect of McFadden's actions but it did not argue the jurors should imagine they were victims of McFadden's actions. *See State v. Deck*, 136 S.W.3d 481, 488 (Mo. banc 2004). Additionally, the State did not comment that the victim's family deserved retribution in the form of demanding the death penalty. The State explained that as members of a civilized society we engage in preserving the due process rights of a defendant and ensuring a fair trial; we do not seek retribution.

### (c) Emotional Statements

■ McFadden claims the State made arguments with no evidentiary support to inflame the jury's emotions and ignore the law. McFadden points to the State's comments on the depravity of mind aggrava-

ting factor, stating that McFadden has "no sanctity for human life," that McFadden involved Douglas into "his web of violence," that McFadden "kills for power, control, status ...," and that McFadden believes in the death penalty; he argues they all were error.

The State argued inferences from the evidence presented in this case. *Brown*, 337 S.W.3d at 14. McFadden was found guilty of first-degree murder committed with Douglas, a juvenile. The circumstances surrounding McFadden chasing Franklin, kicking him, uttering derogatory epithets, and then shooting him multiple times are emotionally charged facts. "Arguments likely to inflame and excite prejudices of the jury are not improper if they help the jury understand and appreciate evidence that is likely to cause an emotional response." *State v. Rhodes*, 988 S.W.2d 521, 528 (Mo. banc 1999).

### (d) Failure to testify

■ McFadden claims the State commented on his failure to testify by asking the jury if McFadden exhibited any remorse in this case. While McFadden objected to this statement, he presents no argument on appeal other than this bare allegation.

■ In the context of the entire closing argument, this statement by the State was not an indirect comment on McFadden's failure to testify. Rather, the State's comment directed the jury's attention to its belief that McFadden did not demonstrate any remorse as he sat in the courtroom. "Generally, a prosecutor may comment during the punishment phase on the lack of evidence of a defendant's remorse, to show the nature of his character." *State v. Anderson*, 79 S.W.3d 420, 440 (Mo. banc 2002).

### (e) Mitigating circumstances

■ McFadden believes the State converted mitigating circumstances into aggravating circumstances. He claims five statements were in error because they confused the jury. McFadden did not object to any of the State's comments.

■ The State's closing argument attempted to demonstrate to the jury that McFadden's behavior was not so unusual to be considered a mitigating circumstance. The State is free to "comment on the evidence and the credibility of the defendant's case.... Counsel may even belittle and point to the improbability and untruthfulness of specific evidence." *Storey,* 40 S.W.3d at 910 (quoting *State v. Hall,* 982 S.W.2d 675, 683 (Mo. banc 1998)). The State did not argue that the jury should disregard any of the evidence. Rather, it was attempting to challenge McFadden's mitigating evidence.

■ This Court agrees with McFadden that the State's closing comments were composed poorly. However, the jury was instructed properly as to what factors should be considered mitigation and what factors should be considered aggravators. The jury is presumed to follow the trial court's instructions. *State v. Barton,* 240 S.W.3d 693, 703 (Mo. banc 2007). McFadden's speculative allegations do not overcome the presumption that the jury followed the trial court's instructions.

Further, McFadden bears the burden to demonstrate the State's comments had a decisive effect on the outcome of his trial and amounted to a manifest injustice. *Anderson,* 306 S.W.3d at 543. McFadden fails to meet this burden especially when his jury was properly instructed. The trial court did not err in failing to declare a mistrial *sua sponte.*

### Point Thirteen: Hearsay and Foundation Challenge

McFadden claims the trial court erred in admitting the recording and transcript of a jailhouse telephone conversation between Addison, Antoine Dickens (hereinafter, "Dickens") and McFadden during the penalty phase of his trial. McFadden objected to the admission of the tape recording on the grounds that Dickens' statements were hearsay and there was no foundation laid because Dickens had not "seen ... listened to ... or identified" the exhibits. McFadden did not object to the admission of the transcript.

### (1) Foundation

■ The trial court maintains broad discretion in determining the admission of tape recordings, and its determination will not be disturbed absent a clear abuse of discretion. *Isa,* 850 S.W.2d at 893. "The admissibility of a tape recording will, however, depend on the particular circumstances of each case." *Id.* Establishing a proper foundation for the admission of a tape-recorded conversation, one must demonstrate:

> (1) the device was capable of recording accurately; (2) the operator of the recording device was competent to operate it; (3) the recording is authentic and correct; (4) changes, additions and deletions have not been made to the recording; (5) the recording has been preserved in an acceptable manner; (6) the speakers are identified; and (7) the conversation was voluntary and without inducement.

*State v. Fletcher,* 948 S.W.2d 436, 439 (Mo. App. W.D.1997) (citing *State v. Wahby,* 775 S.W.2d 147, 153 (Mo. banc 1989)).

■ McFadden objected to the admission of the tape recording on the grounds it lacked foundation because Dickens had "not seen the tape, listened to the

tape, or identified it." A "general objection of lack of foundation does not call to the court's attention the aspect of the foundation which is considered lacking. As such it is inadequate to preserve the matter for review." *State v. Clay*, 225 S.W.3d 462, 465 (Mo.App. W.D.2007) (quoting *Stewart v. Dir. of Revenue*, 702 S.W.2d 472, 476 (Mo. banc 1986)). In his objection, McFadden did not specify for the trial court which foundational element was lacking.

██ There was an adequate foundation to admit the tape recording. First, the fact a tape recording exists demonstrates the device was capable of recording, and Addison testified it was a fair and accurate recording of her conversation. Second, there is a reasonable inference in that the jailhouse recording coupled with Addison's testimony that it was a fair and accurate recording was sufficient to show the operator of the equipment was competent. *See Fletcher*, 948 S.W.2d at 440. The third, fourth, and sixth elements were established by Addison's testimony that the tape was a fair and accurate recording of the conversation she had with Dickens and McFadden. As to the fifth element of proving chain of custody, the State "is not required to show 'hand-to-hand' custody." *Id.* The recording was made of a telephone call from McFadden while he was incarcerated. Addison identified the tape recording as the conversation that she had with McFadden and Dickens. "Positive identification of a tape recording renders the chain of custody issue moot." *Wahby*, 775 S.W.2d at 154. Finally, there was no challenge as to the voluntariness of the conversation; it is clear McFadden was directing the conversation and wanted to speak with Addison.

### (2) Hearsay

██ McFadden also claims that the tape recording was admitted improperly because any evidence of what Dickens stated McFadden told him was hearsay. "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends upon the veracity of the statement for its value." *State v. Winfrey*, 337 S.W.3d 1, 6 (Mo. banc 2011) (quoting *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997)). A hearsay statement is inadmissible unless it is a recognized hearsay exception. *Id.; Taylor*, 298 S.W.3d at 492. The "admission of a criminal defendant is relevant and material if it tends to incriminate the defendant, to connect the defendant to a crime, or to manifest the defendant's consciousness of guilt." *State v. Simmons*, 233 S.W.3d 235, 237 (Mo.App. E.D.2007).

The tape recording and transcript were admitted into evidence because they contained McFadden's admissions. There was no inadmissible hearsay, and the trial court did not err in admitting the recordings.

### Point Fourteen: *Apprendi* Violations

██ McFadden asserts the trial court erred in overruling his pre-trial *Apprendi* motions and ultimately sentencing him to death because the charging document did not include any aggravating circumstances to make him eligible for the death penalty. McFadden's allegations are premised upon an assumption that the aggravating circumstances were additional elements of first-degree murder punishable by death, and therefore, the State violated *Apprendi*, 530 U.S. at 484, 120 S.Ct. 2348.

██ This argument has been rejected by this Court in multiple cases. The notice of aggravated circumstances under section 565.005.1 is sufficient to notify a defendant that he or she is charged with a capital offense. *See Davis*, 318 S.W.3d at 642; *Johnson*, 284 S.W.3d at 589; *John-*

*son*, 207 S.W.3d at 48; *Gill*, 167 S.W.3d at 194; *Strong*, 142 S.W.3d at 711–12; and *State v. Glass*, 136 S.W.3d 496, 513 (Mo. banc 2004). The trial court did not err.

## Proportionality Review

■ This Court is obliged to conduct an independent review of all death penalty cases for proportionality, even when not requested by a defendant. Section 565.035. Section 565.035.3 requires this Court to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

### (1) Passion and prejudice

After an independent review of the record, this Court does not find that the sentence of death was imposed under the influence of passion, prejudice, or any other factor. McFadden has not identified any such factor to this Court, and his allegations of trial error are without merit.

### (2) Aggravating circumstances

The jury found multiple statutory aggravating circumstances. The jury found McFadden has multiple serious assaultive criminal convictions. The jury also found Franklin's murder was outrageously and wantonly vile, horrible, and inhuman in that it involved depravity of mind because McFadden killed Franklin after he otherwise was rendered helpless, thereby exhib-iting a callous disregard for the sanctity of human life. There was sufficient evidence supporting each of the jury's findings of statutory aggravators.

### (3) Similar cases

■ In *Deck*, 303 S.W.3d at 527, 555–63 (J. Stith concurring), and *State v. Anderson*, 306 S.W.3d at 544 (J. Breckenridge concurring), a majority of this Court held that the proportionality review mandated by section 565.035.3 requires consideration of all factually similar cases in which the death penalty was submitted to the jury, including those resulting in a sentence of life imprisonment without the possibility of probation or parole. The concurring opinions in *Deck* and *Anderson* state the applicable law with respect to proportionality review. This Court retains its customary inquiry in applying this approach by continuing "doing what it now does in regard to cases in which death was imposed—review them to determine whether the sentence of death is disproportionate in light of the crime, the defendant and the strength of the evidence ... but ... include[s] similar cases in which a life sentence was imposed in that analysis." *Davis*, 318 S.W.3d at 643–44 (quoting *Deck*, 303 S.W.3d at 560).

This Court has upheld the death sentence when one victim is murdered. *See Johnson*, 284 S.W.3d 561; *State v. Freeman*, 269 S.W.3d 422 (Mo. banc 2008); *State v. McLaughlin*, 265 S.W.3d 257 (Mo. banc 2008). This Court affirmed death sentences when the defendant had a serious assaultive criminal history. *See Bowman*, 337 S.W.3d 679; *Davis*, 318 S.W.3d 618; *Barton*, 240 S.W.3d 693. This Court has upheld death sentences when the murder involved depravity of mind showing a callous disregard for the sanctity of all human life. *See Bowman*, 337 S.W.3d 679; *Davis*, 318 S.W.3d 618; *Baumruk*, 280

S.W.3d 600; *State v. Christeson,* 50 S.W.3d 251 (Mo. banc 2001). Further, death sentences have been upheld when a defendant murders someone who is helpless and defenseless. *See Anderson,* 306 S.W.3d 529; *State v. Tisius,* 92 S.W.3d 751 (Mo. banc 2002); *State v. Cole,* 71 S.W.3d 163, 177 (Mo. banc 2002).

This Court independently researched both death and life cases and has not identified any similar case involving a pursuit of an unarmed man who is rendered helpless, assaulted, and then shot multiple times as committed by McFadden which would support a finding that his death sentence is disproportionate. The imposition of the death penalty meets the statutory requirements.

**Conclusion**

For the foregoing reasons, the judgment is affirmed.

All concur.