STATE of Missouri, Respondent,

v.

Terrell C. GAW, Appellant.

No. SC 89820.

Supreme Court of Missouri,
En Banc.

May 26, 2009.

Rehearing Denied June 30, 2009.

Emmett D. Queener, Office of Public Defender, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

1. References to statutes are to RSMo 2000.

ZEL M. FISCHER, Judge.

Terrell C. Gaw was found guilty, following trial by the circuit court without a jury, of felony driving while intoxicated. Section 577.010.1.[1] Gaw was charged as, found to be, and sentenced as a chronic offender. The issue presented in this appeal is whether the trial court improperly admitted statements made by Gaw in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), and *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

This Court adopts the approach set out in Justice Kennedy's concurring opinion in *Seibert* because it supplies the position taken by the most members of the United States Supreme Court who concurred in the judgment on the narrowest grounds. After applying that analysis to the facts in this case, the judgment is affirmed.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, there must be "substantial evidence" to support the ruling. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998). "[T]he facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded." *State v. Galazin*, 58 S.W.3d 500, 507 (Mo. banc 2001) (citing *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998)).

In "reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Pike*, 162 S.W.3d

464, 472 (Mo. banc 2005). "Deference is given to the trial court's superior opportunity to determine the credibility of witnesses." *Rousan,* 961 S.W.2d at 845. This Court gives deference to the trial court's factual findings but reviews questions of law *de novo. Id.*

## FACTS

Missouri Highway Patrol Sgt. Michael Frazier was dispatched to a one-vehicle accident on Route K west of Racine, Missouri. He observed fluids on the ground. Firefighters and other first responders were at the scene when he arrived.

Sgt. Frazier saw Gaw rummaging through the pickup truck involved in the accident. Sgt. Frazier approached Gaw and asked him if he owned the pickup. Gaw said it was his truck. Gaw's eyes were glassy and bloodshot. He swayed when he walked and used vehicles to steady himself. Sgt. Frazier smelled intoxicants and the odor of burned marijuana on Gaw. Sgt. Frazier believed Gaw was intoxicated.

Sgt. Frazier asked Gaw to give him his marijuana. Gaw reached into his pants pocket, pulled out a small baggie and handed it to the officer. Sgt. Frazier believed the baggie contained marijuana. Sgt. Frazier patted Gaw down, and he found a small pipe used to smoke marijuana in Gaw's other pocket. He arrested Gaw for possession of marijuana. Gaw consented to take a portable breath test. The test results showed a high concentration of alcohol.

After administering the portable breath test, the officer asked Gaw who was driving the truck. Gaw answered that it was either his girlfriend or a friend of hers. Sgt. Frazier told the trial court that Gaw later stated that he was the driver. Sgt. Frazier was the only witness at trial.

Gaw asserts two points on appeal. He first contends the trial court erred in admitting his statements to Sgt. Frazier prior to being warned of his *Miranda* rights and also the statements made after the *Miranda* warnings. He argues the post-*Miranda* statements should be excluded because the officer's improper tactics rendered the warnings ineffective. He contends a reasonable person in his position could not have understood them to convey a message that he retained a choice about continuing to talk to Sgt. Frazier.

In its review, this Court considers the testimony of Sgt. Frazier presented at both the suppression hearing and at trial for purposes of considering whether the trial court properly overruled the motion to suppress and admitting the evidence. *Pike,* 162 S.W.3d at 472.

Sgt. Frazier's testimony was that Gaw was placed under arrest when Sgt. Frazier confronted him about having marijuana and Gaw produced a baggie of marijuana. At that point, Sgt. Frazier handcuffed Gaw. Prior to that time, when Sgt. Frazier had inquired about the accident, Gaw told the officer he had not been driving the vehicle, but that his girlfriend, or a friend of hers, was driving. After Gaw's arrest, Sgt. Frazier again brought up the subject of the accident. During the course of Sgt. Frazier's post-arrest questioning, Gaw admitted that he was the driver. Gaw had not been advised of his *Miranda* rights prior to admitting he was the driver of the pickup.

Sgt. Frazier was asked if, following Gaw's arrest, he asked him any additional questions about the vehicle being driven off the road. Sgt. Frazier responded that he may have asked "a couple of questions for accident information." Sgt. Frazier then was asked if the *Miranda* warning was read to Gaw when they were en route to the Newton County jail. Sgt. Frazier

said that was correct; that they probably were traveling down the highway when he advised Gaw of his *Miranda* rights.

## ANALYSIS

■■ A criminal suspect is entitled to *Miranda* warnings, consistent with the Fifth Amendment right against self-incrimination, once the suspect is subjected to a custodial interrogation. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. "In Missouri, 'custodial interrogation' is defined as questioning initiated by law enforcement officers after a person has been taken into custody...." *State v. Glass*, 136 S.W.3d 496, 511 (Mo. banc 2004). The State is prohibited from using statements obtained during custodial interrogation not proceeded by *Miranda* warnings. *State v. Copeland*, 928 S.W.2d 828, 852 (Mo. banc 1996) (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, "It is, of course, well established that the prosecution may not use statements 'stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination' ") (overruled on other grounds by *Joy v. Morrison*, 254 S.W.3d 885, 889 (Mo. banc 2008)). *See also State v. Werner*, 9 S.W.3d 590, 600–01 (Mo. banc 2000).

Gaw's *Miranda* rights were violated by the initial series of questions asked after he was arrested. These questions elicited Gaw's statement that he had been driving the pickup when it ran off the roadway. The State concedes that these questions violated Gaw's *Miranda* rights, but argues that Gaw's statements made after his *Miranda* rights were explained, rendered the earlier violation of *Miranda* rights harmless.

This case is controlled by *Miranda, Seibert* and *Elstad.*

In its seminal decision in *Miranda*, the Supreme Court of the United States held that, to give effect to the constitutional prohibition against compelled self-incrimination, an individual in police custody must be warned prior to any interrogation that he has the right to remain silent, the right to an attorney, and that anything the individual says may be used against him in a future criminal prosecution. 384 U.S. at 479, 86 S.Ct. 1602.

Failure to give *Miranda* warnings generally results in exclusion of any statements obtained:

> [F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. Conversely, giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver.

*Seibert*, 542 U.S. at 608–09, 124 S.Ct. 2601 (plurality opinion).

Gaw's claim that his post-*Miranda* waiver statements are inadmissible relies heavily on the United States Supreme Court's decision in *Seibert.*

> This case tests a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession. Although such a statement is generally inadmissible, since taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the interrogating officer follows it with *Miranda* warnings and then leads the suspect to cover the same ground a second time. The question here is the admissibility of the repeated statement.

*Seibert,* 542 U.S. at 604, 124 S.Ct. 2601. In *Seibert,* the interrogating officer admitted that "he made a 'conscious decision' to withhold *Miranda* warnings, thus resorting to an interrogation technique he had been taught: question first, then give the warnings, and then repeat the question 'until I get the answer that she's already provided once.'" *Id.* at 605–06, 124 S.Ct. 2601.

In these circumstances, the plurality opinion, as well as Justice Kennedy's opinion concurring in the result, concluded that statements made by the suspect could not be admitted at trial, even if those statements were made after administration of *Miranda* warnings and execution of a written waiver form. To decide whether the post-waiver statements could be admitted into evidence, the four-justice plurality proposed a test that focused on whether *Miranda* warnings could be effective:

> The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function "effectively" as *Miranda* requires. Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier? For unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with *Miranda,* or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment.

*Id.* at 611–12, 124 S.Ct. 2601. The plurality outlined a series of factors courts should consider in determining the effectiveness of "midstream" warnings:

[1] the completeness and detail of the questions and answers in the first round of interrogation, [2] the overlapping content of the two statements, [3] the timing and setting of the first and the second, [4] the continuity of police personnel, and [5] the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id.* at 615, 124 S.Ct. 2601. This plurality presents an objective test that requires no reliance on the trial court's determination of whether the arresting officer was deliberately trying to undermine the protections of the *Miranda* warnings.

In contrast, Justice Kennedy—who supplied the crucial fifth vote for affirmance—adopted what he characterized as "a narrower test," "applicable only in the infrequent case … in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Id.* at 622, 124 S.Ct. 2601. Under Justice Kennedy's approach, "[w]hen an interrogator uses this deliberate, two-step strategy, predicated upon violating *Miranda* during an extended interview, postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps." *Id.* at 621, 124 S.Ct. 2601. Justice Kennedy's test presents a subjective test that relies on a finding of fact by the trial court (made specifically or implied) that the arresting officer was deliberately trying to skirt the protections of *Miranda.*

The dilemma for this Court, because no single opinion in *Seibert* commanded the votes of a majority of the United States Supreme Court, is what rule applies? This Court's choice is not one of discretion or preference, but is determined by well-settled constitutional principles and case precedent.

*Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977),

holds that, where "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *See also Panetti v. Quarterman,* 551 U.S. 930, 127 S.Ct. 2842, 2856, 168 L.Ed.2d 662 (2007).

In this case, the narrowest rationale for affirmance in *Seibert* was that stated by Justice Kennedy: that a confession is inadmissible despite a belated *Miranda* warning where a "two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." 542 U.S. at 622, 124 S.Ct. 2601.

It is clear that a majority of the United States Supreme Court did not adopt the four-justice plurality's suggestion of a multi-factor test to determine the admissibility of such statements; instead, that rationale was rejected explicitly not only by the four dissenting Justices, but also by Justice Kennedy. *Id.* at 622, 124 S.Ct. 2601 (Kennedy, J., concurring in judgment) ("In my view, th[e] [plurality's] test cuts too broadly"). *See also id.* at 627, 124 S.Ct. 2601 (O'Connor, J., dissenting) (stating that in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), "[w]e rejected th[e] [plurality's] theory outright").

On the other hand, Justice Kennedy's proposed approach—which focuses on whether interrogators attempted to deliberately evade *Miranda*'s requirements—is consistent with, albeit narrower than, the approach the plurality advocated. The plurality framed the issue as involving the propriety of "a police protocol for custodial interrogation," *id.* at 604, 124 S.Ct. 2601, that instructs officers to obtain a confession before administering warnings and emphasized that the interrogating officer in *Seibert,* as well as officers around the country, had been instructed to employ this two-step approach to elicit confessions. *Id.* at 609–10, 124 S.Ct. 2601. The plurality observed that "[t]he technique of interrogating in successive, unwarned and warned phases . . . is not confined to Rolla, Missouri," and had in fact been "promoted . . . by a national police training organization." *Id.* at 609, 124 S.Ct. 2601. The purpose and result of this technique is "to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." *Seibert,* 542 U.S. at 611, 124 S.Ct. 2601. The facts of *Seibert* "by any objective measure reveal a police strategy adapted to undermine the *Miranda* warnings." *Id.* at 616, 124 S.Ct. 2601. The conclusion of the plurality opinion took aim at those who deliberately sought to undermine the effectiveness of *Miranda* warnings: "[s]trategists dedicated to draining the substance out of *Miranda* cannot accomplish by training instructions what *Dickerson [v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000),] held Congress could not do by statute." *Id.* at 617, 124 S.Ct. 2601. While the four-justice *Seibert* plurality may have believed that inculpatory statements should be suppressed in *additional* circumstances where *Miranda* warnings were administered "midstream," they plainly concurred in the view that statements obtained as a result of intentional *Miranda* violations were inadmissible.

■ Thus, this Court determines that Justice Kennedy's "deliberate violation" standard represents a "lowest common denominator" between his views and those of the four-justice plurality. This Court accordingly joins numerous other courts that have held that Justice Kennedy's concurring opinion supplies the standard to be applied because it constitutes the "'position taken by those Members [of the United States Supreme Court] who concurred

in the judgments on the narrowest grounds.'" *Marks,* 430 U.S. at 193, 97 S.Ct. 990. *See also United States v. Carter,* 489 F.3d 528, 535 (2d Cir.2007); *United States v. Courtney,* 463 F.3d 333, 338 (5th Cir.2006); *United States v. Ollie,* 442 F.3d 1135, 1142 (8th Cir.2006); *United States v. Williams,* 435 F.3d 1148, 1157–58 (9th Cir.2006); *United States v. Kiam,* 432 F.3d 524, 532–33 (3d Cir.2006); *United States v. Mashburn,* 406 F.3d 303, 308–09 (4th Cir.2005); and *United States v. Stewart,* 388 F.3d 1079, 1090 (7th Cir.2004).[2]

■ The trial court overruled Gaw's motion to suppress and admitted the testimony. The record, reviewed in the light most favorable to the trial court's ruling, disregarding contrary inferences, supports the admission of Gaw's statement that he was the driver. The record contains testimony from Sgt. Frazier that the unwarned testimony was not part of a deliberate plan to undermine Gaw's understanding of the *Miranda* warnings. By adopting Justice Kennedy's subjective test as opposed to the plurality's objective test, the role of trial courts in this state is heightened to ensure that the accused's *Miranda* rights are protected. This is because the accused's *Miranda* rights protections turn on whether the trial court finds an arresting officer's questioning prior to the advisement of *Miranda* rights was inadvertent or intended to acquire an advantage in the interrogation process. A specific factual finding in this regard greatly assists the Court on appellate review.

A review of the appellate case decisions available at the time the trial court overruled the motion to suppress may not have brought this particular nuance to its attention. Complicating the analysis was the *Elstad* opinion. In *Oregon v. Elstad,* 470 U.S. 298, 303–09, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the United States Supreme Court held the mere failure of a police officer to advise a defendant of his *Miranda* rights prior to obtaining a statement does not always render a subsequent statement made after a valid waiver of the defendant's rights inadmissible. Instead, the Court determined that the admissibility of the post-*Miranda* warning statement should turn on whether it was knowingly and voluntarily made. *Id.* at 314, 105 S.Ct. 1285. In *Elstad,* a pre-*Miranda* admission was obtained at the defendant's home when the police arrived at the home to make the arrest. *Id.* at 301, 105 S.Ct. 1285. The State conceded the defendant was in custody at the time, and the admission was suppressed. *Id.* at 302, 105 S.Ct. 1285. The defendant's post-*Miranda* confession, which was obtained at the police station, was held to be admissible. *Id.* at 301, 105 S.Ct. 1285.

Previous appellate court decisions applied the objective test of the plurality opinion in *Seibert* or, in the alternative, decided the admissibility of the post-*Miranda* warning statement based on whether the case was more analogous to *Seibert* or *Elstad.*[3] But, the longstanding princi-

---

**2.** It is noteworthy that this Court's decision affirmed in *Seibert* likewise relied on the fact that "the breach of *Miranda* was part of a premeditated tactic to elicit a confession." *State v. Seibert,* 93 S.W.3d 700, 706 (Mo. banc 2002), *aff'd by Seibert,* 542 U.S. at 600, 124 S.Ct. 2601. *See also Glass,* 136 S.W.3d at 511 (distinguishing *Seibert* because, in earlier unwarned questioning in *Glass,* the interrogating officer "did not purposefully fail to read Glass his *Miranda* rights for fear Glass might assert them").

**3.** Such cases include: *State v. Brooks,* 185 S.W.3d 265, 283 (Mo.App.2006); *State v. Wilson,* 169 S.W.3d 870, 880 (Mo.App.2005); *State v. Williams,* 163 S.W.3d 522, 528 (Mo. App.2005); *Glass,* 136 S.W.3d at 511. None of those cases, other than *State v. Hughes,* 272 S.W.3d 246 (Mo.App.2008), considers whether the plurality decision, or instead Justice

ple of Missouri appellate review is that when there are no findings of fact set out in the judgment by the trial court, the facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary inferences are disregarded. Sgt. Frazier's testimony that his pre-*Mirandized* questioning of Gaw after the arrest for possession of marijuana was not part of a deliberate plan to undermine Gaw's *Miranda* protections supports the factual finding necessary to overrule Gaw's motion to suppress his admission that he was the driver of the pickup truck.

 Once a determination has been made that the pre-*Mirandized* questioning was not part of a deliberate plan to undermine the *Miranda* protections, it is still necessary to determine if the post-*Miranda* statement was voluntarily made. *U.S. v. Stewart*, 388 F.3d 1079, 1090 (7th Cir.2004). Admissibility of a statement made after *Miranda* warnings in a non-deliberate two-step interrogation continues to be governed by the principles of *Elstad*, and should turn "solely on whether it is knowingly and voluntarily made." *See Elstad*, 470 U.S. at 309, 105 S.Ct. 1285, and *Stewart*, 388 F.3d at 1089. Here, the facts and reasonable inferences support the trial court's ruling that Gaw's post-*Miranda* admission was voluntarily made.

Gaw next contends there was insufficient evidence to establish that he was the driver of the pickup. This point was dependent on the argument that Gaw's admission that he was the driver was improperly admitted into evidence at trial. The admission was properly admitted as explained above.

This Court affirms the judgment.

STITH, C.J., PRICE, TEITELMAN, RUSSELL and BRECKENRIDGE, JJ., concur; WOLFF, J., concurs in separate opinion filed.

MICHAEL A. WOLFF, Judge.

To decide whether Terrell Gaw's statement to Highway Patrol Sgt. Frazier should be suppressed, the Court asks two questions to find the law and facts. As to the law: What was the concurring justice thinking in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004)? To get the key fact: What was Frazier thinking when he questioned Gaw before giving him a *Miranda*[1] warning?

That the Court must parse the words of multiple opinions in *Missouri v. Seibert* to find a simple point of law is tough enough. But then, having ascertained the law as given by Justice Kennedy, the concurring justice—whose opinion must be read in the context of a four-justice plurality with four justices dissenting—a court must examine what was in the mind of the arresting officer who interrogated Gaw.

This is a strange way to declare and apply "law," especially law that must be followed by police officers and trial courts that do not have the luxury of wading through scholarly pronouncements.

The opinion of the court of appeals in this case—which suppressed Gaw's statement to the officer—is just as respectable as the principal opinion here. That court's opinion by Judge John Parrish simply

Kennedy's concurrence, provides the controlling rule.

A substantial portion of the analysis from the *Hughes* opinion, written by Judge Alok Ahuja and joined by Judge James Smart and Special Judge Michael Wolff of this Court, has been adopted and incorporated in this opinion without the benefit of citation.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

compared the facts of this case with the facts in *Seibert* and in *State v. Wilson*, 169 S.W.3d 870 (Mo.App.2005), and concluded that they were fairly comparable. Judge Parrish concluded:

> Here, as in *Wilson*, the same officer conducted both the pre-*Miranda* and the post-*Miranda* interrogations. Although the locations of the ongoing interrogation by Sgt. Frazier changed by reason of defendant being transported to the county jail, the continued control by Sgt. Frazier over defendant following defendant's arrest was no less coercive than if defendant had been kept at one location during his interrogation. The content of the statements defendant made while in Sgt. Frazier's patrol car and at the county jail overlapped sufficiently to be considered as responses to a continuous line of inquiry.... The method used to interrogate defendant rendered the untimely *Miranda* warning ineffective for purposes of conveying an understanding to defendant that he retained a choice as to whether to continue to talk to Sgt. Frazier. It was error to admit Sgt. Frazier's testimony that defendant said he was driving the pickup.

Slip Op. at 6. Equally respectable, though reaching the opposite result, is the court of appeals opinion in *State v. Hughes*, 272 S.W.3d 246 (Mo.App.2008).[2] There, Judge Alok Ahuja examined the cases since *Seibert* and reached the same conclusion as to "the law" that the principal opinion adopts here. Judge Ahuja explained:

> [W]e believe that Justice Kennedy's "deliberate violation" standard represents a "lowest common denominator" between

his views and those of the four-justice plurality. We accordingly join numerous other courts which have held that Justice Kennedy's concurring opinion supplies the standard we must apply, since it constitutes the "position taken by those Members [of the Court] who concurred in the judgments on the narrowest grounds."

*Hughes*, 272 S.W.3d at 253 (internal citations omitted).

My overall point is simple: An appellate court should strive to express—in a single, cogent majority opinion—what the law is. If a law—declaring appellate court is unable to achieve that modest goal, the court should decline to decide the case and let the decision of the lower court stand.[3] Society is better off, I believe, with no legal principle than with one that is incoherent or difficult to discern.

I appreciate the efforts of the principal opinion to make the law clear as it applies in Missouri, even though that may in some cases diminish the constitutional protection of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A different view of the law—such as that rendered by Judge Parrish in the court of appeals—perhaps would be better because it focuses on what the officer did rather what was in the officer's mind.

Judge Parrish's approach, moreover, seems more respectful of *Miranda*. Perhaps, as with other great constitutional pronouncements, *Miranda* is being subjected to death by a thousand subsequent distinctions.[4]

---

2. This was a case argued at the 2008 Boys State program. I was a member of the panel and concurred in Judge Ahuja's fine opinion.

3. For instance, the majority decision of the Supreme Court of Missouri in *State v. Seibert*, 93 S.W.3d 700 (Mo. banc 2002)—which was upheld by the U.S. Supreme Court in *Mis-*

*souri v. Seibert*—probably did no harm to the law as to police interrogations.

4. *See, e.g.*, Joel K. Goldstein, *Not Hearing History: A Critique of Chief Justice Roberts's Reinterpretation of Brown*, 69 OHIO STATE L.J. 791 (2009).

Having just expressed the view that appellate judges—more often than not—ought to stifle the urge to dwell on expressing their individual and sometimes idiosyncratic views, I respectfully defer to the wisdom of my colleagues and concur in the principal opinion.