**STATE of Missouri, Respondent,**

v.

**Frank J. TROYA, Appellant.**

**No. WD 75301.**

Missouri Court of Appeals,
Western District.

Sept. 10, 2013.

Shaun J. Mackelprang, Jefferson City, MO, for appellant.

Damien S. De Loyola, Kansas City, MO, for respondent.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

LISA WHITE HARDWICK, Judge.

Frank Troya appeals from his conviction for driving while intoxicated and ten-year prison sentence. Troya contends the circuit court erred in denying his motion to suppress his statement to police on the basis that it was obtained in violation of

*Miranda*.[1] He also contends the court plainly erred in sentencing because the ten-year prison sentence was based on a misunderstanding of the range of punishment. For reasons explained herein, we affirm Troya's conviction but reverse the sentence and remand the cause for resentencing.

### FACTUAL & PROCEDURAL HISTORY

On September 4, 2010, Sergeant Brian Kennedy was on patrol in Excelsior Springs when, at about 2:40 a.m., he saw Troya drive by. Sergeant Kennedy knew Troya's license was revoked, so he pulled Troya over. Troya initially stopped, but as Sergeant Kennedy approached Troya's vehicle on foot, Troya drove away rapidly. Sergeant Kennedy and another officer who had just arrived on the scene, Officer Daniel McGinnis, pursued Troya. As Troya sped away, he committed various traffic offenses, including failing to stop at a stop sign, failing to maintain his lane, driving on the wrong side of the road, and speeding.

Troya eventually crashed his vehicle into a utility pole. Upon doing so, Troya exited his vehicle and ran into nearby woods. Officer McGinnis chased Troya on foot, caught up with him, and instructed Troya to stop. When Troya continued to lead him in a foot chase, Officer McGinnis warned Troya that he was going to deploy his taser if he did not stop. Troya did not stop, so Officer McGinnis deployed his taser. Troya "locked up" and fell down, but then continued to crawl away. By this time, Sergeant Kennedy had arrived at Officer McGinnis and Troya's location and warned Troya that he would be tasered again if he did not stop. Troya then stopped moving and Officer McGinnis restrained him with handcuffs.

Officer McGinnis escorted Troya out of the woods and back to the patrol vehicles where additional officers were waiting. Officer McGinnis and Sergeant Kennedy both observed that Troya smelled of alcohol and showed signs of intoxication, including slurred speech and bloodshot eyes. Sergeant Kennedy asked Troya how much he had had to drink, and Troya responded, "enough." A dash-cam on Sergeant Kennedy's patrol vehicle recorded his conversation with Troya.

After arresting Troya and transporting him to the police station, Sergeant Kennedy advised Troya of both Missouri's Implied Consent Law and the *Miranda* warnings. Troya refused to provide a breath sample but agreed to answer questions. Sergeant Kennedy asked Troya whether he had had anything to drink, and Troya responded, "No." The State subsequently charged Troya with the class B felony of driving while intoxicated ("DWI") as a chronic offender,[2] Sections 577.010 and 577.023.[3]

At a pre-trial hearing on the day of trial, defense counsel made an oral motion seeking to suppress the portion of Sergeant Kennedy's dash-cam recording in which Troya stated that he had had "enough" to drink on the basis that the statement was elicited pre-*Miranda*. After briefly inquiring into the circumstances surrounding Troya's statement, the court denied the defense's motion, explaining as follows:

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. A chronic DWI offender is a person who has been found guilty of four or more intoxication-related traffic offenses. § 577.023. The indictment listed five prior DWI convictions.

3. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2012, unless otherwise indicated.

Well, I will allow [the challenged portion of the video] in the same way that I would allow an officer to testify at, upon making a stop [sic]. I think it's fairly standard, for example, the officer approaches the car, the defendant rolls down the window, and the officer says, have you been drinking tonight, and the defendant responds however he responds.

I think that that still comes in, even though it's a pre-*Miranda* statement. It's a fairly standard question. As far as I know, I think that sort of limited question always comes in. Again, I'll be happy to revisit the issue if there is case law to the contrary, but I don't think that there is.

At that same hearing, the State sought leave to file a First Substitute Information, which added an allegation that Troya was a prior and persistent offender.[4] The First Substitute Information asserted that Troya, as a persistent offender, was subject to "an extended term of imprisonment, specifically imprisonment in the custody of the Missouri Department of Corrections for a term of years not less than ten (10) years and not to exceed thirty years, or life imprisonment, such as that of a class A felony."

In reviewing the First Substitute Information, the court asked: "All right, and this enhances, the State is seeking leave to file this to enhance the range of punishment to a Class A Felony level, is that right?" The State responded affirmatively and the court granted the State leave to file the First Substitute Information over a general objection by defense counsel. The court then reiterated that Troya's being charged as a persistent offender had the effect of "elevating the range of punishment to a Class A Felony."

The case then proceeded to a jury trial. At trial, the State presented the testimony of Sergeant Kennedy and Officer McGinnis, both of whom testified as to their observations of Troya being intoxicated. In addition, Sergeant Kennedy testified about the statement Troya made to him that he had had "enough" to drink. Troya's statement to Sergeant Kennedy was also presented to the jury through the dash-cam video.

The State also presented evidence, outside the presence of the jury, regarding Troya's prior convictions and the circuit court found Troya was a chronic DWI offender and a persistent felony offender. Following the State's case-in-chief, Troya did not present any evidence. The jury found Troya guilty as charged.

Troya appeared for sentencing on December 2, 2011. The prosecutor recounted Troya's criminal history and argued "[t]hat's why the State enhanced [the sentence] to the A-range punishment, and that's what we think he deserves, Judge." Defense counsel requested that the circuit court "consider the minimum, which is two years jail, then allow [Troya] to be released and placed on probation."

After argument by the parties, the trial court observed that Troya had been found guilty of a class B felony, "enhanced to the A-range of punishment as a prior and persistent offender." Then, after commenting on Troya's criminal history, the court again stated that Troya was facing "an A-range of punishment." The court noted

---

4. "A 'prior offender' is one who has pleaded guilty to or has been found guilty of one felony." § 558.016.2. "A 'persistent offender' is one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." § 558.016.3. The First Substitute Information listed two prior felony convictions for two separate offenses committed at different times.

that, based on the A-range of punishment, it could sentence Troya to life imprisonment. Yet, the court ultimately determined that the Sentencing Assessment Report's recommendation of ten years' imprisonment was appropriate and sentenced Troya accordingly. Troya appeals.

### ANALYSIS

#### Point II—Admission of Troya's Pre–Miranda Statement

■ We first address the second point on appeal, in which Troya contends the circuit court erred in admitting his statement to Sergeant Kennedy that he had had "enough" to drink. Troya asserts the statement was inadmissible because it was elicited during a custodial interrogation and before he was given a *Miranda* warning.

The parties dispute whether Troya's claim in Point II is preserved for review. We need not decide the issue, however, because whether we review only for plain error or consider the issue properly preserved, we find no reversible error.

■ "A criminal suspect is entitled to *Miranda* warnings, consistent with the Fifth Amendment right against self-incrimination, once the suspect is subjected to a custodial interrogation." *State v. Gaw*, 285 S.W.3d 318, 321 (Mo. banc 2009) (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602). "The State is prohibited from using statements obtained during custodial interrogation not proceeded by *Miranda* warnings." *Id.*

■ " ' "Custodial interrogation" occurs when a suspect is formally arrested or when under other circumstances the suspect is deprived of his freedom of action in any significant way.' " *State v. Quick*, 334 S.W.3d 603, 611 (Mo.App.2011) (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602). In deciding whether a suspect is in custody for purposes of *Miranda*, courts focus on the totality of the circumstances to determine "whether a reasonable person in the suspect's position would have understood the situation to be one of custody." *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000). "A person being asked preliminary investigative questions by police is generally not in custody and need not be advised of his rights under *Miranda. Quick*, 334 S.W.3d at 611–12."

Troya argues that he was in custody and was subject to an interrogation when he told Sergeant Kennedy that he had had "enough" to drink. Specifically, Troya contends "[a]ny reasonable person in [Troya]'s situation would believe they were under arrest when they were handcuffed and walked to waiting patrol cars and other police officers after they led police officers on a lengthy, vigorous, and dangerous pursuit."

The State disagrees, arguing that Troya made his incriminating statement in response to mere preliminary investigative questions. Moreover, the State asserts that the officer's "use of handcuffs under the circumstances did not convert the stop into a custodial interrogation." See *United States v. Cervantes–Flores*, 421 F.3d 825, 828 (9th Cir.2005) (holding that an officer's "use of handcuffs was justified by [the defendant's] flight and [the officer's] safety concern and thus did not convert the stop into a custodial arrest").

We need not reach the merits of the parties' arguments, however, because regardless of whether Troya's statement was made in response to a custodial interrogation, Troya cannot establish that the admission of his statement was prejudicial. "It remains well-established that we will not reverse a trial court simply for erroneously admitting evidence." *State v. Bynum*, 299 S.W.3d 52, 60 (Mo.

App.2009). "Rather, the defendant must prove that the evidence's admission prejudiced him." *Id.* In order to establish prejudice, the defendant must demonstrate that the improper admission was outcome-determinative. *Id.* "Prejudice is not outcome-determinative when evidence of guilt is otherwise overwhelming." *State v. Duncan,* 397 S.W.3d 541, 544 (Mo.App.2013).

Here, the evidence showed that Troya resisted arrest by leading police on a car chase, eventually crashing his car, and then fleeing on foot. Determined to escape, Troya ignored commands to stop and warnings that he would be shot with a taser. Even after being shot with a taser, Troya attempted to flee. This evidence constitutes strong evidence of Troya's consciousness of guilt. *State v. Adams,* 350 S.W.3d 864, 867 (Mo.App.2011) ("Evidence of consciousness of guilt contributes to a finding of overwhelming evidence.").

Additionally, Sergeant Kennedy and Officer McGinnis both observed that Troya's speech was slurred, that his eyes were bloodshot, and that he smelled of alcohol. At the police station, Sergeant Kennedy advised Troya that if he refused a breath test, his refusal could be used as evidence against him at trial. Troya subsequently refused to provide a breath sample. This evidence alone provided the jury with an ample basis to conclude that Troya was intoxicated when Sergeant Kennedy pulled him over. Accordingly, because the record contains otherwise overwhelming, properly-admitted evidence of Troya's guilt, we do not find the admission of his statement to Sergeant Kennedy outcome-determinative and, thus, prejudicial. Point II is denied.

### Point I—Sentencing

█ In his Point I, Troya contends the circuit court plainly erred in sentencing him to a ten-year prison term because the trial judge misunderstood the possible range of punishment to be ten to thirty years or life imprisonment, when the correct range of punishment was five to thirty years or life imprisonment. Troya argues that if the sentence is left uncorrected, he will suffer manifest injustice.

Troya concedes that he failed to preserve this issue for appellate review by not objecting at the time of sentencing. Consequently, he seeks our discretionary review under Rule 30.20 [5] for "plain errors affecting substantial rights." "Plain error review involves two steps." *State v. Beggs,* 186 S.W.3d 306, 311 (Mo.App.2005). First, this Court must determine whether the trial court committed an evident, obvious, and clear error affecting the defendant's substantial rights. *Id.* Second, even if a clear error is found, this Court cannot grant relief unless it determines that manifest injustice or a miscarriage of justice resulted from the error. *Id.* at 311–12.

█ " 'A sentence passed on the basis of a materially false foundation lacks due process of law and entitles the defendant to a reconsideration of the question of punishment in the light of the true facts, regardless of the eventual outcome.' " *State v. Cowan,* 247 S.W.3d 617, 619 (Mo.App.2008) (quoting *Wraggs v. State,* 549 S.W.2d 881, 884 (Mo. banc 1977)). "This is so even if it is likely the court will return the same sentence." *Id.*

As a persistent offender, Troya was subject to "an extended term of imprisonment." § 558.016.1. "The total authorized maximum terms of imprisonment for a persistent offender or a dangerous offender are ... (2) For a class B felony, any sentence authorized for a class A felony[.]" § 558.016.7. "Thus, the statute only ex-

---

**5.** All rule references are to Missouri Court Rules (2013).

tends the maximum sentence but does not alter the minimum sentence." *Cowan,* 247 S.W.3d at 619. The range of punishment for a B felony is five to fifteen years. § 558.011.1(2). The range of punishment for an A felony is ten to thirty years or life imprisonment. § 558.011.1(1). Accordingly, Troya's range of punishment, as a persistent offender, should have been five to thirty years or life imprisonment.

Troya argues that the circuit "court's acceptance and review of the First Substitute Information and repeated statements about the range of punishment" show that the court incorrectly believed it was required to sentence Troya to a minimum term of at least ten years—as opposed to five years.

The First Substitute Information stated that Troya, as a persistent offender, was subject to imprisonment "for a term of years *not less than ten (10) years* ... such as that of a class A felony." (Emphasis added). In accepting the First Substitute Information, the circuit court expressed its understanding that the effect of charging Troya as a persistent offender was to "enhance the range of punishment to a Class A Felony level." Then, at the sentencing hearing, the court twice defined the sentencing range Troya faced as an "A-range of punishment"—consistent with the language of the First Substitute Information.

The State argues that the court's statements and acceptance of the First Substitute Information does not reflect a misunderstanding of the minimum required sentence. The State contends it is not incorrect to say that Troya faced a class A felony range of punishment "because the class A felony range constituted the 'authorized maximum terms of imprisonment' for Mr. Troya." We disagree.

"Range" is defined as "a sequence, series, or scale between limits," or "the limits of a series: the distance or extent between possible extremes." Merriam–Webster's Collegiate Dictionary 964 (10th ed.1993). Thus, a "range of punishment" is defined by both the maximum "limit" *and the minimum "limit"* of the available sentences. Indeed, this Court has explicitly stated that "[t]he *range* of punishment for an A felony is ten to thirty years or life imprisonment." *Cowan,* 247 S.W.3d at 619 (emphasis added). It follows, then, that because Troya faced a range of punishment of five to thirty years or life imprisonment, the circuit court was incorrect in defining the possible terms as an "A-range of punishment."

Accordingly, we find that the circuit court's acceptance of the First Substitute Information and its statements throughout the proceedings indicate that Troya's sentence was passed on a mistaken belief that he was subject to a minimum term of ten years' imprisonment. Point I is granted. Troya's sentence is reversed and we remand to the circuit court for resentencing.

## CONCLUSION

We affirm the circuit court's judgment with regard to the conviction for driving while intoxicated. The judgment is reversed with regard to the ten-year prison sentence, and the cause is remanded for resentencing consistent with this opinion.

ALL CONCUR.