

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **WD85748** |
| | ) | **Consolidated with WD85752** |
| | ) | |
| KIMBERLY E. VANDERVORT, | ) | **Filed: March 28, 2023** |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY**
The Honorable Karen L. Krauser, Judge

**Before Division Two: Edward R. Ardini, Jr., Presiding Judge,
Lisa White Hardwick, Judge, and Karen King Mitchell, Judge**

Kimberly Vandervort was charged with driving while intoxicated after police responded to her single vehicle collision with a light pole. The circuit court granted in part Vandervort's motion to suppress all custodial statements she made before the arresting officer read her *Miranda* rights. In this interlocutory appeal pursuant to Section 547.200.1(3),[1] the State of Missouri contends the court erred in suppressing Vandervort's refusal to submit to a blood-alcohol test because her refusal was not

---

[1] All statutory references are to the Revised Statutes of Missouri 2016, as updated by the 2022 Cumulative Supplement.

protected by the privilege against self-incrimination.  The State further argues that the circuit court erred in suppressing Vandervort's statement about vomiting in the patrol car because the officer's question was not reasonably likely to elicit an incriminating response.  For reasons explained herein, we reverse, in part, and affirm, in part, the suppression order.

## FACTUAL AND PROCEDURAL HISTORY

On April 4, 2021, Officer Tyler Kalbfleisch was dispatched to Gladstone for a single car collision with a street light.  As he arrived at the scene, Vandervort got out of her damaged car and approached the officer's vehicle.  Officer Kalbfleisch escorted Vandervort back to her car.  Vandervort explained that her car door would no longer close and that she was trying to go home.  Officer Kalbfleisch told her that he had "to do one thing first."

Vandervort attempted to reach into the car, and Officer Kalbfleisch restrained her by using physical force to move her away from the car door.  He said "Stop, stop I'm going to put you in handcuffs."  He placed her against the front fender of the vehicle and said "Right here.  Do not move."  Officer Kalbfleisch then asked routine investigative questions, and Vandervort complied by providing her name, address, and other identifying information.

Officer Brett Sinclair arrived at the scene to assist Officer Kalbfleisch. They asked for Vandervort driver's license and proof of insurance several times.  Each time she attempted to retrieve the documentation, Officer Kalbfleisch prevented Vandervort from

2

reaching into her car, instructed that she stay in front of her vehicle, and physically moved her.

Officer Kalbfleisch asked Vandervort, "how much have you had to drink today?" Vandervort asked the officers, "do you want my ID or not? Are you going to get it yourself or not?" Officer Kalbfleisch began searching her vehicle and found Vandervort's identification, but not her insurance. Vandervort began to explain where her insurance card was located through the open car window and moved around the car door to point to the location. Officer Kalbfleisch grabbed Vandervort's left hand and physically moved her back to the front of her car. Officer Sinclair instructed Vandervort to stand "right here," and began asking her questions about alcohol consumption.

Officer Sinclair attempted to perform standard field sobriety tests, but Vandervort did not comply. Vandervort was placed under arrest, handcuffed and taken to Officer Sinclair's patrol car. The officers continued their investigation by searching for documents in Vandervort's vehicle.

Officer Sinclair went back to his patrol car to ask Vandervort about her cell phone. He heard Vandervort retching. She stated that her cell phone was in her car. Officer Sinclair closed the door, walked over to Officer Kalbfleisch and informed him that Vandervort was "vomiting in the cage." He stated that "she vomited. I'm going to get her back."

Officer Sinclair drove Vandervort to the police station. During the drive, he asked Vandervort "Did you puke back there?" He further stated, "you'll be cleaning that up

3

before you leave." He continued asking Vandervort if she vomited on herself. Vandervort responded "I don't know." Officer Sinclair told her that it was an easy to answer question and she should be able to answer. Vandervort admitted that she had "a little puke" on her shoes and apologized.

At the police station, Officer Sinclair escorted Vandervort from the holding cell to another room. He requested that Vandervort take a breath test and read the implied consent information from Missouri's Alcohol Influence Report (AIR) form. Vandervort responded "No." She then asked about the length of her driver's license revocation for refusal. At that point, Officer Sinclair read Vandervort her *Miranda* rights from the AIR form.

The State charged Vandervort with one count of driving while intoxicated in violation of Section 577.010. The case was set for jury trial on October 3, 2022. At a pretrial conference on September 29, 2022, the court considered Vandervort's motion to suppress all statements she made to Officers Kalbfleisch and Sinclair that were captured on their body cameras. After hearing argument from Vandervort and the State, the circuit court partially granted Vandervort's motion to suppress by oral pronouncement and docket entry on September 30, 2022. The court ruled that Vandervort's statements made post-arrest and pre-*Miranda* would be suppressed, including her refusal to submit to a blood-alcohol test because "the State will want to use that failure to test as an admission of guilt." Based on that ruling, the State requested and was granted a continuance of the October 3 trial date.

4

On October 3, 2022, the State requested formal findings of fact and conclusions of law on the suppression ruling. On October 5, 2022, the State filed a notice of interlocutory appeal of the circuit court's oral ruling and docket entry.

As requested by the State, on October 13, 2022, the circuit court issued "Findings of Fact, Conclusions of Law, Judgment and Order," in support of its "preliminary ruling" on the suppression motion. The court concluded that Vandervort was under arrest at the time she was handcuffed and "should have been Mirandized prior to her custodial interrogation, therefore all alleged statements, oral, written, videotaped, or otherwise recorded prior to being Mirandized shall be suppressed."

The State filed a second notice of interlocutory appeal regarding the "Judgment and Order" on October 20, 2022. The State also filed a motion to consolidate both appeals, which this court granted.[2]

---

[2] We reject Vandervort's argument that this court lacks appellate jurisdiction because the State's first appeal arises from an oral suppression order and, alternatively, that the second appeal was from a judgment entered after the circuit court "lost jurisdiction." Pursuant to Section 547.200.1(3), the State can file an interlocutory appeal within five days of the entry of "any order or judgment the substantive effect of which results in… suppressing evidence." In this case, the State filed its first appeal within five days of the circuit's oral pronouncement and written docket entry suppressing the evidence of Vandervort's custodial statements. This was done in an abundance of caution because it was unclear whether the court would make any further ruling. We note further that the docket entry was attached to the Notice of Appeal, thus the State did not merely appeal the oral pronouncement. After the State requested a formal ruling with findings of fact and conclusions of law, the court issued the "Judgment and Order" affirming its decision to suppress the evidence. The State then filed a second notice of appeal to further protect its rights under Section 547.200. Since the circuit court rendered the same decision in the oral pronouncement, docket entry, and the formal Judgment and Order, the State's appeal of the initial suppression decision was timely and we have jurisdiction to hear the appeal. *See State v. Allen*, 295 S.W.3d 179 (Mo. App. 2009) (suppression order was reaffirmed but not changed by a docket entry 57 days later and, thus, could only be appealed within five days of the original order).

5

## STANDARD OF REVIEW

"The State has the burden at a suppression hearing to show by a preponderance of evidence that a motion to suppress should be denied and the evidence should be admitted." *State v. Wright*, 585 S.W.3d 360, 367 (Mo. App. 2019) (internal quotation and citation omitted). "Our review of a trial court's ruling on a motion to suppress is limited to a determination of whether there is substantial evidence to support the decision." *State v. Humble*, 474 S.W.3d 210, 214 (Mo. App. 2015) (citation omitted). We will reverse the ruling on a motion to suppress only if it is clearly erroneous. *Wright*, 585 S.W.3d at 367 (citation omitted). After a review of the entire record, the circuit court's ruling is clearly erroneous if we are left with a definite and firm impression that a mistake has been made. *Id.*

"In applying this standard of review, we defer to the trial court's factual findings and credibility determinations, and consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Id.* (citation omitted). Whether "the Fifth Amendment or any other provision of the United States Constitution has been violated is a question of law that this Court reviews *de novo*." *Id.* (citation omitted).

**SUPPRESSION OF VANDERVORT'S BLOOD-ALCOHOL TEST REFUSAL**[3]

In Point I, the State contends that the circuit court erred in suppressing Vandervort's refusal to submit to a blood-alcohol test because the refusal was not protected by the privilege against self-incrimination. The State further argues that the officers were not required to give the *Miranda* warning before requesting Vandervort to submit to testing pursuant to Missouri's implied consent law.

The Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 19 of the Missouri Constitution guarantee a person's right against self-incrimination. In order to protect this right, a criminal suspect is entitled to a *Miranda* warning when subjected to a custodial investigation. *State v. Gaw*, 285 S.W.3d 321, 321 (Mo. banc 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "A custodial interrogation occurs only when the suspect is formally arrested or is subjected to arrest-like restraints." *State v. Lammers*, 479 S.W.3d 624, 631-32 (Mo. banc 2016) (citation omitted).

"In Missouri, 'custodial interrogation' is defined as questioning initiated by law enforcement officers after a person has been taken into custody." *Gaw*, 285 S.W.3d at 321 (citation omitted). Custodial interrogation is inherently coercive. *State v. Sparkling*,

---

[3] Vandervort contends Point I was not preserved because the State "never raised the specific issue of [Vandervort's] refusal to consent to a blood alcohol test at the police station as being an admissible pre-*Miranda* statement." The record indicates that neither party specifically referenced the refusal during the suppression hearing, but the court noted that the refusal statement was included within the scope of the suppression ruling because it was made post-arrest and pre-*Miranda*. Since the issue was clearly addressed by the court, we consider it preserved for purposes of appeal.

363 S.W.3d 46, 49 (Mo. App. 2011) (citing *Miranda*, 384 U.S. 436). Generally, "[s]tatements obtained during a custodial interrogation not preceded by *Miranda* warnings are subject to suppression at trial." *State v. Craig*, 550 S.W.3d 481, 484 (Mo. App. 2018) (citation omitted).

While conceding that Vandervort was in custody when she refused the blood-alcohol test, the State argues that the *Miranda* warning was not required because the officers were proceeding under Missouri's implied consent law. The United States Supreme Court has held that "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." *South Dakota v. Neville*, 459 U.S. 553, 564 (1983). The Court reasoned that the Fifth Amendment is limited to prohibiting "physical or moral compulsion" exerted on a person asserting the privilege. *Id.* at 562. With regard to South Dakota's implied consent law, the Court concluded that the state statute did not compel the driver to refuse the test but rather provided the driver with the option to submit or refuse. *Id.*

In light of the notice and warnings required by the South Dakota law, *Neville* also held that the use of evidence of a refusal against a defendant comports with the "fundamental fairness required by due process." *Id.* at 566. The Court explained that the right to silence under *Miranda* is a constitutional protection while the right to refuse a blood-alcohol test under South Dakota law is "a matter of grace bestowed by the South Dakota Legislature." *Id.* at 565. Moreover, under *Miranda*, a person is warned of the

8

danger of choosing to speak but receives no warning of "adverse consequences from choosing to remain silent." *Id.* By contrast, a warning under the implied consent law explicitly provides the consequences of choosing to remain silent. *Id.* Consequently, the Court held that the defendant's due process rights were not violated by admitting evidence of his refusal at trial. *Id.* at 566.

Missouri's implied consent law is virtually indistinguishable from the South Dakota law discussed in *Neville.* Under Section 577.020.1, all persons who operate a motor vehicle on Missouri roadways are deemed to have consented to a chemical or breath test to determine the alcohol or drug content of their blood. A driver is permitted to refuse any such testing; however, such refusal is admissible in any proceeding related to the acts resulting in the driver's detention or arrest. § 577.041.1. Law enforcement is required to inform the driver that evidence of a refusal may be used against them and that such refusal will result in a one-year revocation of their license. §§ 577.041.2, 302.574.3.

Missouri, like South Dakota, provides a driver the right to refuse a blood-alcohol test after adequate notice of the consequences. As such, the State does not compel a driver to refuse or submit to such testing but rather provides a choice. Based on the holding in *Neville*, a refusal to submit to a blood-alcohol test in Missouri is not an act coerced by law enforcement and, therefore, is not protected by the privilege against self-incrimination.

Our courts have analyzed issues regarding self-incrimination under the Missouri Constitution in a manner consistent with those arising under federal constitution. *State v.*

*Werner,* 9 S.W.3d 590, 595 (Mo. banc 2000). We have also followed the guidance set forth in *Neville. State v. Berrey,* 803 S.W.2d 37, 39 (Mo. App. 1990) (the admission in evidence of a defendant's refusal to submit to a blood-alcohol test does not offend any constitutional protections); *Barnhart v. McNeill*, 775 S.W.2d 259, 261 (Mo. App. 1989) (evidence of refusal to submit to testing does not violate due process rights when admitted in criminal prosecution). We have further recognized that, given the independent purposes and requirements of *Miranda* and the implied consent law, there is no particular order in which the warnings must be provided when drivers are arrested for an alcohol-related offense. *Brown v. Director of Revenue,* 34 S.W.3d 166, 172 (Mo. App. 2000).

In light of the holding in *Neville* and our application of the same rule under Missouri's constitutional protections, we find that the circuit court erred in suppressing Vandervort's statement of "no" regarding her refusal to submit to the breath test. Regardless of whether the statement was made while she was in custody, the refusal was not protected by the right against self-incrimination and, therefore, *Miranda* warnings were not required prior to the officers administering the implied consent process. Accordingly, the suppression order is reversed with regard to the refusal statement Vandervort made in response to the notice of implied consent. Point I is granted.

**SUPPRESSION OF VANDERVORT'S STATEMENTS IN THE PATROL CAR**

In Point II, the State contends the circuit court erred in suppressing Vandervort's statements about vomiting in the patrol car because Officer Sinclair's questions were not

reasonably likely to elicit an incriminating response. The State argues that Vandervort's statements were made voluntarily and the officer's questions did not constitute an interrogation because they did inquire whether she had driven while intoxicated.

As referenced in Point I, *Miranda* warnings are required before a criminal suspect is subjected to a custodial interrogation. *Gaw*, 285 S.W.3d at 321. Interrogation includes "express questioning or its functional equivalent ... [i.e.] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Craig*, 550 S.W.3d at 484 (citation omitted). In "[d]etermining whether particular statements or practices amount to interrogation depends on the circumstances of each case, particularly whether the statements are objectively and reasonably likely to result in incriminating responses by the suspect, as well as the nature of the police statements and the context in which they are given." *Id.* at 485 (citation omitted).

The record indicates that Officer Sinclair heard Vandervort "retching" in the patrol car after she was handcuffed and placed under arrest. The officer did not ask Vandervort whether she was vomiting or needed assistance at that time. Rather, he walked over to Officer Kalbfleisch and stated that Vandervort was "vomiting in the cage." He also stated "she vomited, I'm going to get her back."

A short time later as Officer Sinclair drove Vandervort to the police station, he asked her "Did you puke back there?" He stated "You'll be cleaning that up before you leave" and continued to ask whether she vomited on herself. Vandervort responded "I

11

don't know." Officer Sinclair told her that it was an easy question and she should be able to give an answer. Vandervort then acknowledged that she had "a little puke" on her shoes and apologized.

The circuit court determined that the questions asked by Officer Sinclair "are not normally attendant to an arrest" and were "likely to elicit an incriminating response" relating to her intoxication. The evidence supports this finding, particularly in light of Officer Sinclair's repeated efforts to get Vandervort to answer his questions after he had already told Officer Kalbfleisch that she vomited in the patrol car. Given Officer Kalbfleisch's comment that he would "get her back" and the full context of the custodial encounter, we find no error in the circuit court's conclusion that this interrogation went beyond "standard questions in the booking process for an arrest." The court properly suppressed Vandervort's statements in the patrol car because she was under formal arrest and should have been advised of her *Miranda* rights before being subjected to such questions that were reasonably likely to elicit an incriminating response about her state of intoxication. *Craig*, 550 S.W.3d at 484. Accordingly, Point II is denied.

**CONCLUSION**

We reverse, in part, and affirm, in part, the circuit court's order granting the motion to suppress.

LISA WHITE HARDWICK, JUDGE

All Concur.

12
